Thomas Earl
**GRETTENBERG, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 1378–88.**

Court of Criminal Appeals of Texas,
En Banc.

May 9, 1990.

Stanley G. Schneider, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Cathleen C. Herasimuchuk and Russell Hardin, Jr., Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellant was convicted, after a jury trial, of burglary of a habitation with the intent to commit aggravated assault. V.T.C.A. Penal Code, § 30.02. Enhanced by a prior conviction, the jury assessed punishment at life imprisonment in the Texas Department of Corrections[1] and a $10,000 fine. In an unpublished opinion, the San Antonio Court of Appeals reformed the trial court's judgment, finding that appellant was not given notice that the State would seek an affirmative finding of the use of a deadly weapon. *Grettenberg v. State*, No.

---

**1.** Now the Texas Department of Criminal Jus-    tice, Institutional Division.

04–87–00151–CR (Tex.App.—San Antonio 1988) (citing *Ex parte Patterson,* 740 S.W.2d 766 (Tex.Cr.App.1987); V.A.C.C.P. 42.12, § 3g(a)(2)). The affirmative finding was deleted and the judgment was affirmed as reformed.

We granted the State's petition for discretionary review to determine: "(1) If *Ex parte Patterson* is the law in Texas, should it be given retroactive effect to cases indicted and tried before its promulgation?; (2) If *Ex parte Patterson* is the law in Texas, did the appellant preserve any issue for appellate review under Tex.Code Crim. Proc. art. 1.14?; (3) If *Ex parte Patterson* is the law in Texas, did the appellant have actual notice that the State would be seeking a deadly weapon finding in the present case?; and (4) If *Ex parte Patterson* is the law in Texas and an indictment fails to give formal notice of the State's intent, is the proper remedy to delete the affirmative finding or to remand the case to a trial court for an evidentiary hearing to determine whether the appellant had actual notice of the State's intent?" We will reverse.

Appellant was indicted in a single indictment which alleged that appellant:

with intent to commit aggravated assault, enter a habitation owned by ALLISON LAUER, a person having a greater right to possession of the habitation than the Defendant and hereafter styled the Complainant, without the effective consent of the Complainant, namely without any consent of any kind.

It is further presented that in Harris County, Texas, THOMAS GRETTENBERG, hereafter styled the Defendant, heretofore on or about AUGUST 18, 1986, did then and there unlawfully while in the course of committing and attempting to commit burglary of a habitation owned by ALLISON LAUER, attempt to cause the death of ALLISON LAUER, hereafter styled the Complainant, by intentionally strangling the Complainant around the neck with an object unknown to the Grand Jury and having intent to commit capital murder of the Complainant.

The second count, charging attempted capital murder, was voluntarily abandoned by the State prior to trial. On appeal, the Court of Appeals, without deciding whether dismissed portions of an indictment could be used to establish the requisite notice, held that the dismissed portion of the instant indictment failed to do so under any theory. *Grettenberg,* slip op. 16. The Court of Appeals further held that an indictment does not give adequate notice unless it expressly alleges the use of a deadly weapon or alleges the use of a weapon that is deadly per se, relying on *Ex parte Patterson,* 740 S.W.2d 766 (Tex.Cr.App.1987). *Id.*

In its third ground of review, the State argues that under *Ex parte Patterson,* the appellant was on notice that the State would be seeking a deadly weapon finding. We agree with the State.

Clearly, the dismissed portion of the indictment in the instant case satisfies *Ex parte Beck,* 769 S.W.2d 525, 526 (Tex. Cr.App.1989). Accused persons are entitled to notice in some form that the use of a deadly weapon will be a fact issue at the time of prosecution, if the State intends to pursue the entry of a deadly weapon finding pursuant to V.A.C.C.P. art. 42.12, § 3g(a)(2); art. 42.18, § 8(b). *Ex parte Beck,* 769 S.W.2d 525, 526 (Tex.Cr.App. 1989). Any allegation which avers an attempt to cause the death of a person by the use of a named weapon necessarily includes an allegation that the named weapon or instrument was, in the manner of its use or intended use, capable of causing death. *See Ex parte Brown,* 773 S.W.2d 332 (Tex.Cr.App.1989); *Eason v. State,* 768 S.W.2d 312 (Tex.Cr.App.1989). Accordingly, the Court of Appeals erred when it held otherwise.

The instant case is complicated by the fact that the portion of the indictment containing the deadly weapon allegation was voluntarily abandoned by the State. However, accused persons are only entitled to notice, in *some form,* that the use of a deadly weapon will be a fact issue at the time of trial. *Ex parte Beck,* 769 S.W.2d at 526. When the theories of prosecution

contained in the counts are so interrelated as under the facts of this case, the election by the State to pursue one of the counts in preference to the other will not vitiate the notice given in the indictment in its original form. Thus, we hold that the Court of Appeals erred in holding that the dismissed portion of the indictment failed to give the appellant adequate notice that the State would seek an affirmative finding of the use of a deadly weapon. Because of our disposition of this point of error, we need not reach the other grounds presented by the State's petition for discretionary review.

The judgment of the Court of Appeals is reversed and the judgment of the trial court is affirmed.

CLINTON, J., dissents for the reason decision cannot be justified under nor reconciled with *Luken v. State*, 780 S.W.2d 264, at 266.

MILLER, J., dissents.

STURNS, J., not participating.

TEAGUE, Judge, dissenting.

The record reflects that after serving approximately 8 years in the penitentiary on the equivalent of a 123 year sentence from McLennan County, (on change of venue from Travis County), Thomas Earl Grettenberg was released to parole status to Harris County by what was then the Texas Board of Pardons and Paroles, which is now the Pardons and Paroles Division of the Texas Department of Criminal Justice. While on parole, Grettenberg was accused of committing a number of criminal wrongs in Harris County.

The record also reflects that before the trial of this cause, Grettenberg was tried and convicted by a jury in Harris County for committing the offense of burglary of a habitation with intent to commit aggravated assault. Punishment, enhanced, was assessed by the jury at life imprisonment and a $10,000 fine. The jury also made an affirmative finding that Grettenberg used or exhibited a deadly weapon during the commission of the offense.

The Houston Fourteenth Court of Appeals, in an unpublished opinion, affirmed. See *Grettenberg v. State*, No. B14–87–00059–CR, August 25, 1988. Grettenberg's petition for discretionary review was refused by this Court on May 10, 1989. See this Court's cause number 1198–88. Grettenberg did not challenge in the appeal of that cause the affirmative deadly weapon finding that the jury had made.

In this cause, Grettenberg was originally indicted in Harris County for committing the offenses of burglary of a habitation with intent to commit aggravated assault and attempted capital murder. Before this cause was transferred to Bexar County, the State abandoned or dismissed the attempted capital murder allegation of the indictment, thus removing from the indictment any allegation that might have given Grettenberg written notice that the State intended to seek an affirmative deadly weapon finding when the cause was tried in Bexar County. A jury in Bexar County found Grettenberg guilty of the burglary offense and assessed his punishment, enhanced, at life imprisonment and a $10,000 fine. Notwithstanding the omission from the indictment of any allegation regarding a deadly weapon, plus the fact that the State did not attempt to give Grettenberg any other kind of written notice, and over objection, in addition to instructing the jury on the possible punishments, the trial judge asked the jury to make the determination whether during the course of the commission of the offense Grettenberg had exhibited or used a deadly weapon. The jury answered the question in the affirmative.

On direct appeal, in an unpublished opinion, the San Antonio Court of Appeals ordered the affirmative finding deleted from the judgment, on the ground that Grettenberg had not received sufficient written notice that the State intended to seek an affirmative finding when the cause was tried in Bexar County. See *Grettenberg v. State*, No. 04–87–00151–CR, November 21, 1988, (Held, "The indictment does not give adequate notice and there is no indication in the record that appellant received such notice.") We granted the State's petition for discretionary review, inter alia, in order

**616**

to make the determination whether the court of appeals correctly decided the notice issue.

The principal issue before this Court to decide, however, is whether it should go and find and then burn *Ex parte Patterson*, 740 S.W.2d 766 (Tex.Cr.App.1987), and its progeny, in the nearest acceptable red hot oven, should that not have already occurred. Of course, if *Ex parte Patterson* were a human being, and had a wife and children, then the issue would be whether it would be acceptable for the "Gang of Five" to go and capture Patterson and his family, find the nearest and largest tree located in the area, and then hang Patterson and his family by their necks until it was finally determined that they were all actually dead, if that has not already occurred. Many prosecuting attorneys, as evidenced by the bitter diatribes of *Ex parte Patterson* that members of this Court have witnessed in recent times, would, of course, like to see either event take place. See, for example, the State's brief filed in *Luken v. State*, 780 S.W.2d 264 (Tex.Cr.App.1989). It may be that in this cause those frustrated prosecutors, led by the "Gang of Five", may finally be successful in destroying whatever is left of *Ex parte Patterson*, which is truly down for another ten count.

Carefully read, the majority opinion obviously does much mischief to this area of the law, if that is possible. For example, the majority opinion concludes that "accused persons are only entitled to notice, *in some form*, that the use of a deadly weapon will be a fact issue at the time of trial...." (Page 614 of majority opinion), and cites *Ex parte Beck*, 769 S.W.2d 525 (Tex.Cr.App.1989), as its authority to support such statement. If "in some form" means *either* oral or written, then it is in conflict with *Luken v. State*, supra. There, without a single dissenting vote or opinion, this Court ruled: "Today we hold that, just as an enhanced sentence *must be supported by written allegations* of a prior conviction or convictions, an affirmative finding of use or exhibition of a deadly weapon *must be supported by a written pleading, albeit not necessarily in the indictment.* (Footnote deleted.)" (My em-

phasis.) In *Luken*, 780 S.W.2d at 266–267, this Court also ruled that "proof alone will not support such a finding, for evidence alone gives the accused 'no prior indication that the nature of a weapon used was to be a particular issue in the case, with additional consequences vis-a-vis his liberty.'" Today, however, the majority opinion, without citing any authority, holds: "When the theories of prosecution contained in the counts are so interrelated *as under the facts of this case,* the election by the State to pursue one of the counts in preference to the other will not vitiate the notice given in the indictment in its original form." (Page 615 of majority opinion.) (My emphasis.)

In this instance, I find that the majority opinion acts much like a magician might perform, i.e., "You saw the lion once, didn't you? Now, why can't you see the lion again, notwithstanding that the lion has been dispatched to the unknown?"

How far can a prosecuting attorney run with the thread he might pull from the majority opinion before it completely unravels? For example, is sufficient notice given if a prosecuting attorney, while he and defense counsel are in a restroom at the same time, before court commences that morning, reaches over and gets a sheet of toilet tissue and writes thereon, "We are going to seek an affirmative finding against your client during his trial today," and hands same to defense counsel, but later tells counsel to throw the piece of paper away, which counsel does. In that instance, would the State later be entitled, without more, to seek an affirmative deadly weapon finding? It would appear by the majority opinion that this would be more than sufficient notice that the State intended at some time during the defendant's trial to seek an affirmative deadly weapon finding.

In this instance, the indictment, *as it legally read in Bexar County where this cause was tried,* in particular, as it read when the jury was instructed at the punishment stage of the trial on the issue whether appellant exhibited or used a deadly weapon during the commission of the offense of burglary of a habitation with intent to commit aggravated assault, it did

not contain any allegation that might have encompassed a weapon, implement, or instrumentality that could be found by any factfinder to be "a deadly weapon." Notwithstanding this omission in the indictment *at that time*, the majority opinion manages to hold, in what appears to be some form of weird retrospective reasoning, that this gave Grettenberg more than sufficient notice that the State was going to seek an affirmative finding to the special issue when the case went to trial in Bexar County.

The record reflects that before venue of this cause was changed from Harris County to Bexar County, the State abandoned or dismissed the attempted capital murder count of the indictment, which contained the only allegation in the indictment that might have supported the trial judge submitting the special issue to the jury, or the jury's affirmative finding to the special issue, whether appellant had used or exhibited a deadly weapon during the commission of the burglary offense. The jury assessed punishment, enhanced, at life imprisonment and a $10,000 fine, and also answered the special issue in the affirmative.

The San Antonio Court of Appeals, after finding that appellant did not receive sufficient notice pursuant to the indictment, as the indictment existed when the jury was given the special issue to answer (remember, the attempted capital murder count was abandoned or dismissed by the State way back in Harris County), nor in any other way, ordered the affirmative finding deleted from the judgment and affirmed the trial court's judgment of conviction in an unpublished opinion. See *Grettenberg v. State*, No. 04–87–00151–CR, November 21, 1988.

The majority opinion reverses the judgment of the court of appeals and holds that as the original indictment contained sufficient allegations of a deadly weapon, that was sufficient to give Grettenberg notice that the State might seek during his trial in Bexar County an affirmative finding that he used or exhibited a deadly weapon during the commission of the offense. However, it fails to discuss what this Court held

in *Luken*, nor does it even make an attempt to distinguish *Luken* from what happened in this cause. It relies, instead, on *Ex parte Beck*, 769 S.W.2d 525 (Tex.Cr. App.1989), as its authority. This is understandable given the fact that for all practical purposes Beck hit Patterson so hard in the first round of their fight that Patterson still remains unconscious, although he is occasionally propped up by this Court to give the illusion that he is still fighting in the ring, although not consciously aware that the referee has already stopped the fight and counted him out. Also see *Ex parte Beck*, 769 S.W.2d at 530 (Teague, J., dissenting opinion), and *Gilbert v. State*, 769 S.W.2d 535, 537 (1989) (Teague, J., dissenting opinion).

The majority opinion also does not explain how one can breathe life either to an indictment that no longer exists because it has been dismissed at the insistence of the State, or breathe life into that part of an indictment which contained a material allegation that was previously dismissed at the insistence of the State. Compare Art. 1.14(b), V.A.C.C.P. This omission from the majority opinion is not understandable in light of this Court's decision of *Garcia v. Dial*, 596 S.W.2d 524, 528 (Tex.Cr.App. 1980), in which this Court held that once a criminal indictment has been dismissed, "there is, concomitant to such dismissal, no case pending against the accused and, accordingly, no jurisdiction remaining in the dismissing court...." (528).

I find that *Garcia v. Dial* is on point in principle with what occurred in this cause. Here, the State dismissed from the indictment the only allegation regarding a deadly weapon. Once this occurred, the trial court lost jurisdiction over that portion of the indictment. When Grettenberg went to trial in Bexar County, there was nothing in the indictment that might have given him notice that the State would, during the trial, at either stage of the trial, seek an affirmative finding regarding a deadly weapon. Also see *Stephens v. State*, (Tex. Cr.App. No. 914–88, May 2, 1990).

Of course, if the record reflected or indicated that although the State was dismissing the attempted capital murder count for prosecution purposes only, but was still going to rely upon those allegations for purposes of giving Grettenberg written notice that it might seek during his trial in Bexar County a deadly weapon finding from the factfinder, then this Court would be confronted with another, but entirely different issue. However, that did not happen in this cause. In this cause, the State, without any reservations or qualifications, caused the attempted capital murder count of the indictment to be dismissed, and there is nothing in the record that through some other form of notice, either oral or written, Grettenberg was put on notice that the State might seek in Bexar County an affirmative deadly weapon finding.

Given what occurred in this cause, how can one logically argue that Grettenberg had written notice, assuming that when Grettenberg was tried written notice was required before the State could seek an affirmative deadly weapon finding, see *Luken,* supra, that the State would seek in Bexar County an affirmative finding that he used or exhibited a deadly weapon during the commission of the primary offense? Except through some sort of weird retrospective reasoning, I don't believe he can.*

Therefore, I respectfully dissent.

---

* On direct appeal, the State argued that "if dismissed portions of an indictment may be looked to in order to satisfy an element of the offense, surely those portions may be used to demonstrate that a defendant had actual knowledge that the State would seek a deadly weapon finding," citing *London v. State,* 739 S.W.2d 842, 844 (Tex.Cr.App.1987), as authority. The court of appeals, however, did not address this contention because it sustained Grettenberg's above point on appeal. Furthermore, given the facts that are set out in *London, London* is inapposite to the facts of this cause, as far as giving a defendant written notice that the State intends to seek an affirmative deadly weapon finding after it has dismissed the deadly weapon allegation from the indictment.