IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 




NO. 3-91-165-CR




FRANK HARRY ROBERT BRAUN,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT



NO. 39,547, HONORABLE C. W. DUNCAN, JR., JUDGE 



 




 After the jury found appellant guilty of murder, Tex. Penal Code Ann. § 19.02
(1989), the court, pursuant to a plea bargain agreement, assessed punishment at thirty-five years. 
Appellant asserts four points of error, contending that the court erred by: (1) overruling his
motion for a mistrial after the State elicited testimony before the jury that appellant had refused
to give a written statement; (2) overruling his objection to the court's charge on the basis that
appellant did not have notice that the State would seek an affirmative finding of appellant's using
and exhibiting a deadly weapon except in the course of the same criminal episode; (3) overruling
his objection to the court's charge submitting the use and exhibition of a deadly weapon in a form
that was at variance with the language of the indictment; and (4) overruling his objection to the
State's argument relative to the jury not needing to waste time deliberating on whether there was
a deadly weapon because it encouraged the jury to disregard the court's charge. We reject the
appellant's points of error and affirm the judgment of the trial court.

 Henry King, Jr., aged eleven months, was taken by ambulance from the Westerner
Motel in Killeen to Scott and White Hospital in Temple on May 17, 1990, with injuries which
resulted in his death thirty-six hours later. The victim's mother, Kerry Tucker, began living with
appellant about August 1, 1989, a short time after Henry's natural father left Tucker. Tucker and
the appellant lived at the motel where both were employed. On the occasion in question, Tucker
left Henry with the appellant for five or ten minutes, and upon her return, she observed that the
child had a "bluish color." Appellant advised Tucker that Henry was choking. Appellant had his
finger in the child's mouth in an effort to remove anything that was causing an obstruction.

 Dr. David Hardy, the examining physician in the emergency room, described
various injuries to the child's head and face, stating that the type of injuries indicate they were
"inflicted by a person who was out of control." The injuries were the type sustained "where a
child's head has traveled through space and hit up against a solid object" and consistent with
"some type of intentional trauma done to the child's head." Dr. Jeffery Barnard, medical
examiner of Dallas County, performed an autopsy on the body of the deceased. The autopsy
showed hemorrhaging over both the covering of the brain's surface and the under-surface of the
brain. Dr. Bernard characterized the injuries as "lethal" and concluded that death was the result
of a homicide rather than an accident. Dr. Linda Norton, a forensic pathologist with experience
in child abuse since 1976, testified that the medical records reflected that the blows to the head
and face were the type that "carry a lot of force" and "the head simply can't tolerate this kind of
impact force."

 Tucker testified that she had seen the appellant strike Henry before the day in
question, and that she would generally step in and "we would get into a physical fight." Appellant
did not like crying and would "explode" at Henry. When Tucker questioned appellant about
bruises she found on the child, appellant would tell her that the child had fallen.

 A next door neighbor, Roy Pointer, testified that he had heard appellant "hollering
at it [Henry] . . . bumping noises against the wall . . . and the baby would quit crying." Suzanna
Rincones, an employee at a store where appellant and Tucker shopped, testified that she had observed bruises on the child's face and injuries around his eyes. Dr. Derek Lichota, an
orthopedic resident at Scott and White, testified that he overhead the appellant telling a woman,
"Don't tell them anything, they don't know what happened. We can go home and get our story
straight and come back and tell them."

 In his first point of error, appellant asserts that the court erred in overruling his
motion for mistrial after the State elicited testimony before the jury that appellant had refused to
give a written statement. Appellant contends that this testimony was fundamentally unfair and a
deprivation of due process under the Fourteenth Amendment to the United States Constitution.

 The following occurred on redirect examination of Detective Linda Price of the
Temple Police Department:



BY MR. BLEDSOE: [prosecutor]


Q. Detective Price, did you ask Mr. Braun to give a written statement to you
when you interviewed him on the 18th?


A. Mr. Braun?


Q. Yes.


A. Yes, sir.


Q. Did he give one or refuse?


A. He refused.


MRS. JEZEK: [defense counsel] Your Honor, I'm going to object to any
reference here of a failure to give a written statement on behalf of this defendant. 
He has an absolute right to remain silent.


MR. BLEDSOE: Your Honor, the question was asked clearly in response to her
development of testimony of how voluntary he went and all that and it goes to her
explaining about how voluntary he went.


THE COURT: I'm going to sustain the objection.


MRS. JEZEK: Your Honor, I request an instruction to the jury.


THE COURT: The jury is instructed to disregard the question and answer given
as to the voluntariness of any statement given or not given by the defendant. The
defendant has an absolute right to remain silent. You cannot take from that any
inference or other evidence in any manner that would take away from him that
right to remain silent. He has that right and it cannot be used against him in any
manner.


MRS. JEZEK: We'll move for a mistrial, Your Honor.


THE COURT: Overruled.

 Appellant contends that the court's action in sustaining his objection and instructing
the jury to disregard was not sufficient to remove the harmfulness of the complained-of testimony
under Doyle v. Ohio, 462 U.S. 610 (1976). In Doyle, the court held that a defendant could not
be impeached concerning his failure to relate exculpatory matters to officers after he had been
arrested and advised of his Miranda rights. In Fletcher v. Weir, 455 U.S. 603 (1982), the court
modified its holding in Doyle where the record failed to reflect that the officers had given the
defendant his Miranda warnings, stating:



In the absence of the sort of affirmative assurances embodied in the Miranda
warnings, we do not believe that it violates due process of law for a State to permit
cross-examination as to post-arrest [pre-Miranda] silence when a defendant chooses
to take the stand. A State is entitled, in such situations, to leave to the judge and
jury under its own rules of evidence the resolution of the extent to which post-arrest [pre-Miranda] silence may be deemed to impeach a criminal defendant's own
testimony.



Fletcher, 455 U.S. at 606.

 In Sanchez v. State, 707 S.W.2d 575 (Tex. Crim. App. 1986), the State used the
defendant's post-arrest, pre-Miranda warning silence to impeach the defendant. The court stated
that this was the type of question that the Supreme Court had left for the State to resolve in
Fletcher. Sanchez, 707 S.W.2d at 578. The Sanchez court stated:



Under the decisions of this Court, once the State has restrained the liberty of the
defendant to the degree that an arrest has occurred, privilege attaches to its fullest
extent. Conversely, the right to remain silent does not arise when arresting
officers deign to verbalize that right, but rather at the very moment the arrest is
accomplished. Since the defendant's right against self-incrimination arises when
he is arrested, post-arrest silence is presumed an exercise of that right. The State
may not, therefore, violate the defendant's right against self-incrimination by the
use of post-arrest silence. Accordingly, we hold that pursuant to Art. I, § 10 of
the Texas Constitution, when the defendant is arrested, he has the right to remain
silent and the right not to have that silence used against him, even for impeachment
purposes, regardless of when he is later advised of those rights.



Id. at 580.

 We must first determine whether appellant was under arrest at the time in question
since pre-arrest silence is a constitutionally permissible area of inquiry. See Jenkins v. Anderson,
447 U.S. 231 (1980); Waldo v. State, 746 S.W.2d 750, 755 (Tex. Crim. App. 1988). Tex. Code
Crim. Proc. Ann. art. 15.22 (1977), provides:



A person is arrested when he has been actually placed under restraint or taken into
custody by an officer or person executing a warrant of arrest, or by an officer or
person arresting without a warrant.



 The court in Hawkins v. State, 758 S.W.2d 255, 256 (Tex. Crim. App. 1988),
stated that under article 15.22, the "point of arrest" occurs at the moment a person's freedom of
movement is restricted or restrained. The United States Supreme Court has stated that, for the
purpose of Fourth Amendment analysis, a person has been "seized" "if, in view of all the
circumstances surrounding the incident, a reasonable person would have believed that he was not
free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980).

 Detective Price testified that in response to a call from Scott and White Hospital
that the doctors believed a child patient had sustained nonaccidental injuries, Price and Cindy Voss
of the child protective services of the Department of Human Services went to the hospital to make
an investigation the day before the child died. After determining who had custody of the child,
Tucker and the appellant were asked if they would come to the police department and "speak with
us." Appellant responded that they would if they could get transportation and accompanied Voss
in her car to the station. Price related that the only information she possessed at that time was that
the child had sustained injuries and Tucker and the appellant were parents or caretakers of the
child. Price stated that she had no suspects in the case, did not know the proximity of the child
to Tucker and the appellant at the time the child sustained injuries, and wanted to talk to them
because "[T]hey were in essence the parents of the child and should have known what happened
to their child." Price related that Tucker and the appellant were not under arrest and that they
were allowed to leave after they talked to Price and Voss. Prior to questioning appellant, Price
gave appellant Miranda warnings, explained to him that his presence was voluntary and that he
could leave at anytime. Appellant signed a voluntary appearance form.

 Prior to the question about whether appellant refused to sign a written statement,
Price had testified about what appellant had told her in an interview that lasted "forty five minutes
to an hour." Appellant told Price that the child was fine when Tucker left him, that appellant
turned his back on the child for five to ten seconds to change the stereo, and when he returned to
the child, he found him lying on the ground "twitching and he [appellant] believed he was
choking." Appellant admitted having slapped the child on one occasion that had "left a mark but
that it did go away." Before leaving, appellant was interviewed by Voss. Voss testified that
appellant told her that he had an "explosive temper" and that on "different occasions had hit the
baby." Appellant "just couldn't stand a baby to cry," but that he had "handled his temper
regarding the baby crying by walking off; that the baby seldom cried."

 The lack of information possessed by the officers, the willingness of appellant to
engage in a lengthy interview with Price and Voss, the admonishment of Price to appellant that
his appearance was voluntary and the fact that he was allowed to leave following the interview are
all factors consistent with appellant not being under arrest. Moreover, it would be logical for any
investigation to begin with the parents or custodians of an injured child. Absent any arrest, no
error is shown under either Doyle or Sanchez.

 Assuming arguendo, that appellant was under arrest, we believe the court's action
in sustaining the objection and instructing the jury to disregard was sufficient to cure the error. 
In Waldo, the arresting officer testified that the defendant remained silent after he had given him
the Miranda warning. Waldo, 764 S.W.2d at 752. Appellant's objection to the officer's
testimony was sustained and the court instructed the jury "to disregard the last comment of the
witness." Id. The court stated that it did not find the "potential for prejudice from a comment
on post-Miranda silence to be as great as that which necessarily derives from a prosecutor's
deliberate comment on a defendant's failure to testify." Id. at 753-54. The court concluded:



That jurors could readily choose to give an accused's post-Miranda silence no
detrimental significance whatsoever, as evincing nothing more than an innocent
reliance on the right itself, indicates that its potential for prejudice, though
sufficiently outweighing its probative value to render it inadmissible as a matter of
federal evidentiary law, is not so great as necessarily to defy curability in every
case. . .


 

We therefore refuse to embrace a rule that in general Doyle error will not be cured
by an instruction to disregard. Instead we will honor the presumption that the
instruction was efficacious unless consideration of the facts of the particular case
"suggest[s] the impossibility of withdrawing the impression produced on the minds
of the jury[.]"



Id. at 754 (citations omitted).

 In the instant cause, the jurors, after hearing Price and Voss relate the matters
appellant had told them in the interviews, could have logically concluded that the question was
directed to whether appellant's remarks were reduced to writing and signed by him. The Doyle
error, if any, was not of such character as to adversely affect the jury that an instruction to
disregard would not cure the error. Appellant's first point of error is overruled.

 In appellant's points of error two and three, complaint is made of the court's action
in overruling his objections to the court's charge relative to the use of a deadly weapon. 
Appellant's objections are directed to his lack of notice that the State would seek an affirmative
finding except in the course of the same criminal episode, and that the submission of the use and
exhibition of a deadly weapon issue is in a form that is at variance with the language of the
indictment. 

 The indictment charging appellant with murder alleges that appellant:



did then and there intending to cause serious bodily injury to an individual, Henry
King, Jr., commit an act clearly dangerous to human life, to-wit: did then and
there strike the said Henry King Jr.'s head with his fist, strike the said Henry King
Jr.'s head with an object to the Grand Jury unknown and slam the said Henry King
Jr.'s head against an object to the Grand Jury unknown thereby causing the death
of the said Henry King Jr.


and the said Frank Harry Robert Braun did then and there intentionally and
knowingly use and exhibit a deadly weapon, to-wit: Defendant's fist and a deadly
weapon to the Grand Jury unknown in the course of the same criminal episode.



(Emphasis added).

 The court's charge instructed the jury that in the event that it found the defendant
guilty of murder, then it would consider if the defendant used or exhibited a deadly weapon. The
charge included definitions of "deadly weapon" and "serious bodily injury." The concluding
paragraph in the deadly-weapon portion of the charge provided:



 Now bearing in mind the foregoing instructions, if you believe from the
evidence beyond a reasonable doubt that the Defendant alone intentionally and
knowingly used or exhibited a deadly weapon during the commission of or
immediate flight from the offense of which you found the Defendant guilty, you
will so say by your verdict, but if you do not believe or if you have a reasonable
doubt thereof, you will so say by your verdict.



(Emphasis added).

 In Luken v. State, 780 S.W.2d 264 (Tex. Crim. App. 1989), the jury made an
affirmative finding that the defendant in a burglary of a habitation with specific intent to commit
sexual assault had used or exhibited a deadly weapon. The court found that the deadly-weapon
finding had not been supported by written pleading, in indictment or elsewhere. The court further
stated, "Moreover, because it is not alleged either death or serious bodily injury was caused, the
indictment does not `necessarily include' an allegation that anything was used in that `in the
manner of its use . . . [was] capable of causing death or serious bodily injury.'" Id. at 266. The
court stated that the notice was not the "variety" required by the constitution to charge a crime,
but instead was notice to alert an accused "that a particular finding of fact, having an
incrementally greater impact upon his liberty than a base conviction, may even be made." Id. 
In Ex Parte Beck, 769 S.W.2d 525, 528 (Tex. Crim. App. 1989), the court held that notice
sufficient to support an affirmative finding that the defendant used or exhibited a deadly weapon
in the commission of the offense is given when the indictment contains an averment of deadly
weapon or a named deadly weapon per se. 

 In Grettenberg v. State, 790 S.W.2d 613 (Tex. Crim. App. 1990), the conviction
was for burglary of a habitation with the intent to commit aggravated assault. The court rejected
the defendant's contention that he was not given notice that the State would seek an affirmative
finding of the use of a deadly weapon. Despite the fact that the State abandoned the second count
of the indictment alleging that while in the course of committing burglary the defendant attempted
to cause the death of the victim by strangling the victim, the court held that the defendant was
given adequate notice that the State would seek an affirmative finding in the use of a deadly
weapon. Id. at 614. The court noted that accused persons "are only entitled to notice, in some
form, that the use of a deadly weapon will be a fact issue at the time of trial." Id.

 Appellant was entitled to notice in some form that the State would seek an
affirmative finding on use of a deadly weapon. The indictment in the instant cause contained an
allegation that death resulted. In addition, the indictment had an averment of use of a deadly
weapon "in the course of the same criminal episode." We perceive no error in the court's
instruction authorizing a finding of the use of a deadly weapon "during the commission of or
immediate flight from the offense." Appellant's second and third points of error are overruled.

 In his fourth point of error, appellant contends that the court erred in overruling
his objection to the prosecutor's argument, "Again you need not waste time deliberating about
deadly weapon. Clearly there is one, a child is dead," on the ground that it encouraged the jury
to disregard the court's charge.

 Appellant asserts that the prosecutor's argument suggests that the jury need only
consider the result, the death of a child, and not whether it was the appellant's intentional or
knowing use of something which in the manner of its use was capable of causing death or serious
bodily injury. During the State's closing argument, the following occurred which forms the basis
of the appellant's contention:



 First of all let's talk about issues you don't have to address in the jury room,
because based on what you've heard it's clear, it's a murder case, it's a deadly
weapon case. The defense concedes that, that's not an issue, don't worry about it. 
They want you to somehow think that Kerry Tucker is the one that killed the child,
as opposed to being a lousy mother who allowed a hostile environment to exist,
somebody we wouldn't trust our kids with. Well, that's not the issue. The issue
is who killed Henry King, and that's the only issue.


 Again you need not waste time deliberating about deadly weapon. Clearly
there is one, a child is dead --


 MRS. JEZEK: I'm going to object to his requesting the jury not to
consider what's in the charge and what the law is in this case.


 MR. BLEDSOE: Your Honor, this is argument.


 THE COURT: Overruled.


 Preceding the complained-of argument, the prosecutor had argued "based on what
you have heard it's clear, it's a murder case, it's a deadly weapons case." Earlier, after reviewing
the medical testimony relative to the severity of the force required to produce the injuries, the
prosecutor had argued, "I would submit from the evidence, we the jury find him guilty as
charged, we the jury find there was a deadly weapon used or exhibited."

 A complained-of statement may be considered in the context of the entire argument. 
Livingston v. State, 531 S.W.2d 821, 823 (Tex. Crim. App. 1976). When the prosecutor's
argument is read as a whole, the complained-of statement comes within the permissible area of
being a reasonable deduction from the evidence. See Franklin v. State, 693 S.W.2d 420, 429
(Tex. Crim. App. 1985). Appellant's fourth point of error is overruled.

 The judgment is affirmed.




 

 Tom G. Davis, Justice

[Before Justices Aboussie, B. A. Smith and Davis*]

Affirmed

Filed: May 27, 1992

[Do Not Publish]




















* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (1988).