TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00446-CR







Frizzell C. Henderson, III, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL

DISTRICT

NO. 95-712-K368, HONORABLE BURT CARNES, JUDGE PRESIDING






 Frizzell C. Henderson, III, ("appellant") was charged in a four-count indictment with
engaging in organized criminal activity by conspiring to deliver a controlled substance (Count I), delivery
of a controlled substance (Count II), conspiracy to commit aggravated robbery (Count III), and attempted
aggravated robbery (Count IV). A jury rejected appellant's pleas of not guilty and convicted him of all four
counts. The trial court, finding that a deadly weapon was used in the commission of each offense, assessed
punishment at thirty years in prison on Count I and Count II and twenty years in prison on Count III and
Count IV. Appellant raises ten points of error on appeal, attacking the sufficiency of the evidence as to
Counts I, II and IV and the affirmative deadly weapon findings as to Counts I, II, and III. Appellant does
not challenge his conviction for conspiracy to commit aggravated robbery, and the judgment stands on that
basis. Further, he does not challenge the deadly weapon finding as to his conviction for attempted
aggravated robbery. While we will sustain the challenges to the deadly weapon findings as to Counts I and
II, we will affirm the convictions in all other respects.


STATEMENT OF FACTS

 Kevin Michael Salgado (Kevin) mailed his cousin, Michael Salgado, ten pounds of
marihuana. Michael was supposed to deliver the marihuana to Kevin's buyer. On January 5, 1995, as
Michael was receiving the marihuana, he was apprehended by an Austin Police Department ("APD")
officer posing as a United Parcel Service delivery man. In return for no charges being filed against him,
Michael agreed to set up a larger deal with Kevin. When Kevin could not arrange a one-hundred-pound
marihuana sale, he and Michael lowered their sights to a two-kilogram cocaine deal. As part of the sting,
Michael bought an eighth of an ounce of cocaine from Kevin on April 28, 1995. At the buy, Kevin told
Michael that the cocaine in the two-kilo deal was as good as, or better than, the sample. He also told him
the cocaine would cost $35,000. Michael paid $150 for the sample to Dawn Seely, Kevin's girlfriend. 
The two-kilo drug transaction was scheduled to transpire that weekend but had to be rescheduled twice,
once because Kevin got a tip that federal agents were in town and once again because APD did not have
the manpower for the operation. The parties finally agreed that the deal would take place on May 13,
1995. 

 On the day before, Dawn, now acting as the middleman in place of Kevin, informed
Michael that the cocaine would be at her house the next morning. Michael was supposed to arrive at
Dawn's house with the money. The cocaine, however, was not at Dawn's house the next day. While he
was waiting at her residence, Michael saw Dawn make a phone call and heard her speak to someone
named "Frizzell." Dawn then told Michael that "they" did not want to show the cocaine until "they" saw
the money. At the prompting of the APD officers, Michael suggested they make the buy at the Drury Inn. 
After the officers had set up at the Drury Inn, Michael contacted Dawn. Dawn told Michael that the
suppliers had changed their minds about the location and wanted to meet at the same place where Michael
bought the sample of cocaine, a house in a residential neighborhood. Not wanting to send Michael to the
house by himself with the money, APD arranged for an undercover officer, Stan Farris, to act as the buyer
and accompany Michael to the buy. 

 Once Officer Farris and Michael arrived at the house, they showed Dawn the money,
which was in the trunk of Farris' car. (1) Afterwards, they went inside and waited for the suppliers to arrive. 
Dawn told Farris that she had gone to high school with appellant, that she knew him well, that she had done
business with him in the past, and that the cocaine he had to sell was very good quality. Dawn then paged
someone. The page was immediately returned, and Farris heard Dawn speaking to someone named
"Frizzell." She told the person on the phone that the money was at the house. After the phone call, Dawn
told Michael and Farris that the cocaine would be at the house in five to ten minutes. 

 About ten or fifteen minutes later, appellant and Steven Wallace Flournoy, Jr., (Steve)
pulled up in front of the house in appellant's Saab, which appellant was driving. Dawn and Farris went
outside. For the next twenty-five to thirty minutes, Dawn negotiated with Farris, who was in his car, and
appellant and Steve, who remained in appellant's car. Appellant and Steve would not show Farris the
drugs but kept asking to see the money. Farris refused numerous times to show them any money without
first seeing the drugs. At one point, appellant demanded to see just $22,000 of the $35,000. Farris
repeatedly asked for them to at least hold up the package containing the drugs before he showed them any
money. Appellant and Steve then left the scene for about ten minutes but called Dawn to tell her they were
returning. Their proposed plan was for Farris to send Dawn over to appellant's car with the money. 
Appellant and Steve would remove the drugs from the trunk, take the money out of the briefcase, place
the drugs in the briefcase and send it back to Farris via Dawn. 

 Upon returning to the house, Steve retrieved a package wrapped in a green towel from the
trunk of the car and placed it in a bag. He got back into the passenger seat and waived the package as
if to show they had the drugs. (2) Farris testified that, at that point, he was sure the transaction was not a
legitimate drug deal but a "rip-off." Although he gave the signal for the bust, Farris continued to pretend
as if he were retrieving the money from the car until the police cover team arrived so as not to tip off
appellant and Steve. He did not want the suspects to leave the scene and cause a high speed chase. In
addition, Farris further testified that he was afraid appellant and Steve might have a gun because most rip-offs involve guns. In fact, when the police team arrived, one of the officers found a loaded gun on the floor
of the passenger side of appellant's car.

 After his arrest but while he was still at the scene, appellant made a statement to an officer. 
He said that Dawn told him that she had a buyer for two kilos of cocaine. She then asked appellant and
Steve if they could supply the drugs. Appellant said they called Dawn and told her they had the two kilos
of cocaine. He claimed that they planned to rob Dawn and the buyers and that was the sole reason they
told her they had the drugs. Appellant also talked to the officer about the gun found at the scene. He said
that he and Steve brought the gun in case the deal went bad. He further explained that they needed the gun
because they had wrapped up a Nintendo video game to look like cocaine, and, if Dawn opened it and saw
it was not the cocaine, they were still going to get the money. Appellant admitted that they would have
done whatever it took to get the money, even if he and Steve had to shoot somebody. Appellant then
acknowledged his ownership of the gun.

 The prosecution also entered into evidence a written statement appellant gave to the police
while he was in custody. In his statement of May 18, 1995, appellant related that Dawn approached him
and Steve and asked if they could get her two "keys" of cocaine. When Dawn paged appellant the next
day, appellant told her it would be at least two weeks because the "feds were in Houston." Appellant then
stated that he had Dawn believing they could get the drugs for her but that he and Steve actually were
planning to "jack" her and leave with the money. Appellant further explained that "jack" means rob. He
also said that he and Steve made the package containing the Nintendo game look like drugs so that Dawn
and the buyers would think he and Steve had the cocaine. Appellant stated he got the gun from his cousin
in Dallas.

 On November 15, 1995, appellant was indicted for engaging in organized criminal activity,
delivery of a controlled substance, conspiracy to commit aggravated robbery and attempted aggravated
robbery. The jury convicted appellant of all four counts, and the trial court sentenced him, finding that a
deadly weapon had been used in the commission of each offense. Appellant now brings ten points of error
on appeal. 


DISCUSSION

 In his first six points of error, appellant complains that the evidence is not legally or factually
sufficient to support his convictions for engaging in organized criminal activity, delivery of a controlled
substance, and attempted aggravated robbery. Point of error seven avers that the State did not provide
requisite notice of its intent to seek a deadly weapon finding as to the counts of engaging in organized
criminal activity, delivery of a controlled substance, and conspiracy to commit aggravated robbery, and
points of error eight through ten attack the sufficiency of the evidence supporting these deadly weapon
findings. 

 The critical inquiry on review of the legal sufficiency of the evidence to support a criminal
conviction is whether the record evidence could reasonably support a finding of guilt beyond a reasonable
doubt. The relevant question for the appellate court is whether, after viewing the evidence in the light most
favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); Griffin v. State, 614
S.W.2d 155, 159 (Tex. Crim. App. 1981). When conducting a factual sufficiency review, the appellate
court views all the evidence equally and impartially, without viewing it in the light most favorable to the
prosecution. The reviewing court should set aside the verdict only if it is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. Clewis v. State, 922 S.W.2d 126, 136 (Tex.
Crim. App. 1996); Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd untimely
filed). 

 Accused persons are entitled to notice in some form that the State intends to pursue the
entry of an affirmative finding of the use of a deadly weapon. See Narron v. State, 835 S.W.2d 642, 643
(Tex. Crim. App. 1992); Grettenberg v. State, 790 S.W.2d 613, 614 (Tex. Crim. App. 1990). The
Grettenberg court indicated that notice in one count will be sufficient to constitute notice to other counts
"[w]hen the theories of prosecution contained in the counts are so interrelated as under the facts of [the]
case." Grettenberg, 790 S.W.2d at 614-15. Before an affirmative finding as to use of a deadly weapon
may be made, the State is required to prove beyond a reasonable doubt that the defendant employed or
used a deadly weapon so as to facilitate the associated felony. Hill v. State, 913 S.W.2d 581, 583 (Tex.
Crim. App. 1996). Use of a deadly weapon during the commission of a felony offense refers not only to
the actual wielding of a firearm but also extends to any employment of a deadly weapon, including mere
possession, if such possession facilitates the associated felony. Patterson v. State, 769 S.W.2d 938, 941
(Tex. Crim. App. 1989). In order to use a deadly weapon for affirmative finding purposes, the weapon
must be utilized to achieve an intended result. Narron, 835 S.W.2d 644.


A. Engaging in Organized Criminal Activity

 The trial court's charge instructed the jury to find appellant guilty of engaging in organized
criminal activity if it found that appellant


 . . . conspired to commit delivery of a controlled substance, namely cocaine . . . with the
intent to establish, maintain, or participate in a combination or in the profits of a
combination, which combination comprised [appellant] and at least two of the following
persons: Steven Wallace Flournoy, Jr., Kevin Michael Salgado, and Dawn M. Seely . .
. .



 Appellant argues that the evidence is insufficient to support his conviction for engaging in
organized criminal activity because the evidence at trial demonstrated that he did not have any cocaine to
deliver and that he never had the intent to deliver cocaine. Appellant maintains that he and Steve only
intended to rob Dawn and her buyers, and, therefore, could not have participated in any combination to
deliver cocaine. We reject appellant's argument.

 A person commits the offense of engaging in organized criminal activity if, with the intent
to establish, maintain, or participate in a combination, or in the profits of a combination or as a member of
a criminal street gang, he commits or conspires to commit one of the enumerated offenses, including
unlawful delivery of a controlled substance. See Tex. Penal Code Ann. § 71.02(a)(5) (West Supp. 1998). 
In other words, to be convicted of engaging in organized criminal activity, a defendant must have
committed, or conspired to commit, an underlying offense with the specific intent to participate in that
offense with a number of persons. See Barber v. State, 764 S.W.2d 232, 234 (Tex. Crim. App. 1988);
Shears v. State, 895 S.W.2d 456, 459 (Tex. App.--Tyler 1995, no pet.). Here, the underlying crime
is conspiracy to deliver a controlled substance. By definition, a person "conspires to commit" a crime when
he agrees with others to engage in conduct that would constitute an offense and performs some overt act
pursuant to their agreement. See Tex. Penal Code Ann. § 71.01(b) (West 1994). The agreement that
constitutes a conspiracy can be inferred from the parties' conduct. See Mayfield v. State, 906 S.W.2d
46, 48 (Tex. App.--Tyler 1995, pet. ref'd). The combination needed to find appellant guilty of engaging
in organized criminal activity is defined as three or more persons who collaborate in carrying on criminal
activities. Tex. Penal Code Ann. § 71.01(a) (West 1994). To prove appellant intended to act within a
combination, the State may offer evidence of appellant's conduct and surrounding circumstances to show
that appellant had knowledge of the criminal activity within the group and that he intended to participate. 
See Mayfield, 906 S.W.2d at 49; Nickerson v. State, 686 S.W.2d 294, 297 (Tex. App.--Houston [14th
Dist.] 1985, pet. ref'd).

 From both the direct and circumstantial evidence, the jury could have found a combination
existed. Appellant admitted in both his oral and written statements that Dawn contacted him and Steve
about supplying her with two kilos of cocaine and that he told Dawn they had the cocaine. During the
several attempts to schedule and reschedule the drug deal, Dawn paged someone who would immediately
return her phone call. After each page, Michael and Farris overheard Dawn speaking to someone named
"Frizzell." In one such conversation, Dawn related that the drug money was at the house. Dawn also told
Farris that she had been involved with appellant in the past and that the cocaine he had to sell was very
good quality. There is at least some evidence that appellant intended to participate in a combination with
two other people, Dawn and Steve, to conspire to deliver a controlled substance. Further, the jury, as the
exclusive judge of the facts, the credibility of the witnesses, and the weight to be given testimony, was free
to disregard appellant's statement that he only intended to rob Dawn and her buyers. See Chambers v.
State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) (as factfinder, jury is entitled to judge credibility of
witnesses and can choose to believe all, some, or none of testimony presented by parties). The jury could
have concluded that appellant made a genuine offer to sell the drugs and that it was only after he discovered
that he was unable, or became unwilling, to produce that he and Steve decided to rob Dawn and the
buyers. The verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust; from the evidence, the jury could find appellant guilty beyond a reasonable doubt. Points of
error one and two are overruled.

 Appellant also attacks the deadly weapon finding as to this charge. To uphold the finding,
we must conclude that the evidence showed that appellant used his gun to facilitate the offense. This we
cannot do. The proof does not reveal a weapon was involved until appellant drove to the supposed
delivery site. Appellant was guilty of engaging in organized criminal activity by conspiring to deliver a
controlled substance, at least, when he told Dawn that he and Steve had the two kilos of cocaine and
partook in conversations with her regarding the drug deal. There was no testimony that a deadly weapon
was used at this time. We sustain point of error eight.


B. Delivery of a Controlled Substance

 The charge instructed the jury 


. . . if you find from the evidence beyond a reasonable doubt that. . . [appellant] knowingly
or intentionally delivered, by offering to sell, a controlled substance, namely cocaine . . .
you will find the defendant guilty of the offense of Delivery of Controlled Substance . . . .



 A person commits the offense of delivery of a controlled substance by knowingly or
intentionally delivering a controlled substance listed in Penalty Group 1. See Tex. Health and Safety Code
Ann. § 481.112 (a) (West Supp. 1998). (3) Delivery of a controlled substance can be committed by offering
to sell a controlled substance. See Tex. Health and Safety Code Ann. § 481.002(8) (West Supp. 1998). 
Appellant, however, contends that there was no evidence that he offered to sell cocaine. Rather, he
maintains that the evidence only established that he agreed to sell cocaine, which he argues is not the same
as offering. Since the statute does not define "offer," appellant relies on the interpretation of "offer" in
contract law. He argues that Dawn made the offer to purchase cocaine and that he only accepted her offer. 
As such, appellant did not offer to sell the cocaine within the meaning of the statute. We are not persuaded
by appellant's argument.

 When faced with the issue of whether to define "offer to sell" under the law of contracts,
one court of appeals declined to give civil law construction to a penal provision. Francis v. State, 890
S.W.2d 510, 512 (Tex. App.--Amarillo 1994, pet. ref'd). The court specifically found that the phrase
"offer to sell" should not be defined under the law of contracts. Id. The court explained:


When words in a statute or ordinance are not defined, they are ordinarily given their plain
meaning without construction of penal laws or laws on other subjects, unless the statute or
ordinance clearly shows they were used in some other sense.



Id. We likewise reject Henderson's urging that we import the contract definition of "offer to sell" into the
criminal law context.

 As the Texas Court of Criminal Appeals has stated, the offense of delivery of a controlled
substance by offer to sell is complete when, by words or deed, a person knowingly or intentionally offers
to sell what he states is a controlled substance. Stewart v. State, 718 S.W.2d 286, 288 (Tex. Crim. App.
1986). Actual transfer need not occur, and a defendant need not even have any controlled substance. Id. 
When appellant called Dawn and told her that he and Steve had the two kilos of cocaine she requested,
he was offering to sell her the drugs. See Vivianco v. State, 825 S.W.2d 187, 191 (Tex. App.--Houston
[14th Dist.] 1992, pet. ref'd) (defendant's representations by word that he could supply eight kilos of a
controlled substance constituted offer to sell). We find the evidence legally and factually sufficient to
support the verdict and overrule points of error three and four.

 We must sustain appellant's challenge to the deadly weapon finding as to delivery of a
controlled substance. The evidence did not establish the involvement of a weapon until appellant drove to
the alleged delivery site. However, as the State suggests, the offense was legally complete before appellant
arrived at the location. When appellant told Dawn he had the two kilos of cocaine, the offense was
completed. Further, because appellant did not have any drugs in his possession, this case is factually
distinguishable from Patterson where the affirmative deadly weapon finding was upheld on the theory that
the gun was used to protect the drugs. See Patterson, 769 S.W.2d at 942. We sustain point of error
nine.


C. Conspiracy to Commit Aggravated Robbery

 We note that appellant does not challenge the evidence to support his conviction for this
offense, and the judgment stands on that basis. Appellant's complaint centers only on the affirmative deadly
weapon finding. First, appellant avers that the trial court erred in entering the deadly weapon finding
because the State did not provide the requisite notice that it intended to seek the finding. (4) The State,
however, gave notice of its intent to seek the deadly weapon finding in Count IV of the indictment, which
charged appellant with attempted aggravated robbery. Under Grettenberg, since conspiracy to commit
aggravated robbery is so closely related to attempted aggravated robbery, we find that appellant had
adequate notice of the State's intent. Point of error seven is overruled. 

 Second, appellant challenges the evidence supporting this finding. Appellant admitted that
he and Steve brought the gun in case the deal "went bad"; thus, they had contemplated this possibility and
had planned ahead by bringing the gun to protect themselves and to achieve their intended result, acquiring
the money, which was the aim of the conspiracy. Further, appellant conceded that he and Steve would
have done whatever it took to get the money, including shooting someone if necessary. Moreover, the
conspiracy was still in effect at the time appellant and Steve were arrested with appellant's loaded gun lying
on the floor of the passenger side of appellant's car. We hold that the evidence is sufficient to support the
finding as to conspiracy to commit aggravated robbery, and we overrule point of error ten. 


D. Attempted Aggravated Robbery

 The jury was charged to find appellant guilty of attempted aggravated robbery if it found
that appellant


. . . with specific intent to commit the felony of aggravated robbery, attempted to
intentionally or knowingly threaten or place Stan Farris in fear of imminent bodily injury or
death, in the course of committing theft and with intent to obtain or maintain control of the
property, and using or exhibiting a deadly weapon, namely a firearm.



Claiming that the evidence only established mere preparation to commit the offense of attempted
aggravated robbery, appellant challenges the legal and factual sufficiency of the evidence supporting his
conviction. (5) Specifically, appellant claims that Farris was never put in fear of imminent bodily injury or
death since Farris never got close enough to appellant's car and appellant never got out of his car. 

 A person commits aggravated robbery who, in the course of committing theft and with
intent to obtain or maintain control of the property, intentionally or knowingly threatens or places another
in fear of imminent bodily injury or death and, in the course of doing so, uses or exhibits a deadly weapon. 
See Tex. Penal Code Ann. § 29.03 (West 1994). Under the law of criminal attempt, the State is required
to show that the defendant committed an act amounting to more than mere preparation for committing the
offense, in addition to showing that the defendant had the specific intent to commit the offense. See Tex.
Penal Code Ann. § 15.01(a) (West 1994); Santellan v. State, 939 S.W.2d 155, 163 (Tex. Crim. App.
1997). The law of criminal attempt does not require that every act short of actual commission of the
offense be accomplished. See Santellan, 939 S.W.2d at 163; Gibbons v. State, 634 S.W.2d 700, 706
(Tex. Crim. App. 1982). In any attempted criminal offense, the sufficiency of the evidence must be
determined on a case-by-case basis. Flores v. State, 902 S.W.2d 618, 620 (Tex. App.--Austin 1995,
pet. ref'd).

 We hold that the record contains sufficient evidence to establish appellant's intent to commit
aggravated robbery and to prove that he engaged in acts beyond mere preparation. Both appellant's
written and oral statements provide his intent to commit aggravated robbery. In his written statement,
appellant explained that he and Steve were planning to rob Dawn and take the drug money. In his oral
statement, he stated that he and Steve brought the gun in case the deal went bad and that they would do
whatever it took to get the money. Appellant even admitted that he and Steve would have shot someone
if necessary. As for acts amounting to more than mere preparation, testimony revealed that, on the day of
the deal, appellant and Steve got in appellant's car, placed appellant's loaded gun on the floor of the
passenger seat, and appellant drove them to the house where the transaction would take place. Farris
testified that appellant led the negotiations during the alleged narcotics transaction, repeatedly asking to see
the money. When Farris refused to send over the money, appellant asked to see a reduced sum. In
response to Farris's insistence that he first see the drugs before showing the money, appellant and Steve
disguised a video game as the promised kilos of cocaine to lure Farris into sending over the money. Farris
testified that, once he suspected appellant and Steve planned robbery and not an actual narcotics
transaction, he thought appellant and Steve might jump out of the car and try to take the money by force. 
He further testified that he felt certain they had a gun because most of these types of robberies include a
gun. In fact, he had seen many guns inside the house where they were meeting and knew appellant and
Steve had chosen this location.

 The record thus contains legally sufficient evidence from which a rational trier of fact could
have found the essential elements of attempted aggravated robbery beyond a reasonable doubt. Further,
we disagree with appellant's argument that the evidence only established mere preparation because Farris
was never put in fear of imminent bodily injury or death. The jury could have concluded, from Farris'
testimony, that appellant's actions placed Farris in fear or imminent bodily injury or death. Regardless, in
order to prove appellant attempted to do so, the State need not prove that appellant succeeded in all
elements of the intended crime. See Sorce v. State, 736 S.W.2d 851, 856 (Tex. App.--Houston [14th
Dist.] 1987, pet. ref'd). We conclude that the verdict is not so contrary to the great weight of evidence
as to be clearly wrong and unjust. We overrule points of error five and six.

CONCLUSION

 We hold the evidence to be legally and factually sufficient to support appellant's convictions
for engaging in organized criminal activity, delivery of a controlled substance, and attempted aggravated
robbery. As such, points of error one through six are overruled. We uphold the affirmative finding of a
deadly weapon as to conspiracy to commit aggravated robbery, concluding that appellant had adequate
notice of the State's intent to seek such finding and that the evidence supports the entry. Accordingly,
points of error seven and ten are overruled. Finally, having determined that the evidence was not sufficient
to support the affirmative deadly weapon findings as to engaging in organized criminal activity and delivery
of a controlled substance, we sustain points of error eight and nine. Consequently, we reform the judgment
by striking the deadly weapon finding as to Counts I and II and, as reformed, affirm the judgment of the
trial court.



 

 Marilyn Aboussie, Justice

Before Justices Powers, Aboussie and B. A. Smith

Reformed and, as Reformed, Affirmed

Filed: February 12, 1998

Do Not Publish
1. Farris did not have the full $35,000. To give the appearance that he did, bundles of smaller bills
were wrapped inside bundles of one hundred dollar bills. 
2. The package did not contain two kilos of cocaine but a Nintendo video game.
3. Cocaine is listed in penalty Group 1. See Tex. Health and Safety Code Ann. § 481.102(3)(D)
(West Supp. 1998). 
4. Appellant also claims in this point of error that the State did not provide notice of its intent to seek
the deadly weapon findings as to the offenses of engaging in organized criminal activity and delivery of a
controlled substance. Because we find the evidence insufficient to support the affirmative findings as to
these offenses, we need not reach the merits of appellant's argument. 
5. We note that appellant does not question the affirmative deadly weapon finding entered as to this
offense. Thus, even if we were to sustain all his points of error concerning the findings, this finding would
still remain in effect.



ellant's loaded gun on the floor of the
passenger seat, and appellant drove them to the house where the transaction would take place. Farris
testified that appellant led the negotiations during the alleged narcotics transaction, repeatedly asking to see
the money. When Farris refused to send over the money, appellant asked to see a reduced sum. In
response to Farris's insistence that he first see the drugs before showing the money, appellant and Steve
disguised a video game as the promised kilos of cocaine to lure Farris into sending over the money. Farris
testified that, once he suspected appellant and Steve planned robbery and not an actual narcotics
transaction, he thought appellant and Steve might jump out of the car and try to take the money by force. 
He further testified that he felt certain they had a gun because most of these types of robberies inclu