Aubrey SANDERS, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 13–94–291–CR.

Court of Appeals of Texas,
Corpus Christi.

Feb. 19, 1998.

Rehearing Overruled March 19, 1998.

Nora Colleen Ryan, Bay City, for Appellant.

Jim Vollers, Austin, Robert E. Bell, Criminal District Attorney, Edna, for Appellee.

Before DORSEY, YANEZ and RODRIGUEZ, JJ.

## OPINION

RODRIGUEZ, Justice.

Appellant, Aubrey Sanders, Jr., was indicted for burglary of habitation.[1] A jury found him guilty, found two felony enhancement paragraphs of the indictment true, found appellant had used or exhibited a deadly weapon, and assessed punishment at life in prison plus a $10,000 fine. This Court reversed and remanded to the trial court in *Sanders v. State*, 911 S.W.2d 227, 230 (Tex.App.—Corpus Christi 1995) (hereinafter *"Sanders I"*). The court of criminal appeals granted discretionary review and reversed and remanded to this Court. We affirm as modified.

### Procedural History

On original submission, we held the appellant was denied his absolute right to a jury shuffle under article 35.11 of the Texas Code of Criminal Procedure when the trial court shuffled the Sanders panel which included jurors already selected to serve in another case. *Sanders I*, 911 S.W.2d at 229. Because the other jurors were removed from the venire before voir dire and appellant failed to request a jury shuffle thereafter, the court of criminal appeals reversed, holding appellant had waived any "claim that his shuffle improperly included persons who did not ultimately sit on the jury panel." *Sanders v. State*, 942 S.W.2d 3, 5 (Tex.Crim.App. 1997) (hereinafter *"Sanders II"*). Accordingly, the court remanded the case to this Court to address appellant's remaining points of error.

In his original brief to this Court, appellant raised thirteen points of error. On remand, he filed a brief containing four points of error—two from the original brief and two new points of error. The State contends that neither the rules of appellate procedure nor case law permit the raising of new points of error on remand. *See Theus v. State*, 863 S.W.2d 489, 491 (Tex.Crim.App.1993) (holding that remand from Texas Court of Criminal Appeals was equivalent to filing transcript and statement of facts, thereby giving parties thirty days to file a brief); *see also Theus v. State*, 874 S.W.2d 121, 126 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (noting that appellant should be foreclosed from raising points of error on remand not asserted in original brief). We agree.

■ Where an appellant files a brief in the court of appeals and the cause is subsequently remanded to that court by the court of criminal appeals, the only new issues that should be briefed are those issues raised as a result of the opinion by the court of criminal appeals, its application on remand, and any subsequent authorities on the issues that had previously been presented. *Cf. Bell v. State*, 956 S.W.2d 560, 561 (Tex.Crim.App.1997) (holding that appellant is not entitled to file new brief unless issue is raised by court of criminal appeals); *Texas Dep't of Transp. v. Cotner*, 877 S.W.2d 64, 66 (Tex.App.—Waco 1994, writ denied) (holding that issue not raised in first appeal cannot be attacked in later appeal). To permit appellant to raise issues not addressed in his original brief nor raised by the court of criminal appeals, would give appellant a second "bite at the apple." This we cannot do.

■ Because appellant failed to raise "remand" points of error two and four in his original brief to this Court, and the court of criminal appeals instructed us, on remand, to "address [a]ppellant's *remaining* points error," *Sanders II*, 942 S.W.2d at 5 (emphasis added), we hold appellant has waived these points of error. We now address appellant's *remaining* points.

### Facts

In February 1993, appellant and Carolyn Sanders, his estranged wife, had been separated for approximately two years. Ms. Sanders was living with her sister, Betty Ann

---

1. Tex. Penal Code Ann. § 30.02 (Vernon 1994).

Gardner, in a house located at 903 Second Street, Edna, Texas.[2] In the early morning hours of February 21, 1993, appellant arrived at the residence, knocked on the door, was met by Ms. Sanders, and informed he should leave or she would call the police. He appeared, at that time, to have left the premises. Shortly thereafter, appellant entered the residence by breaking down the door and attacked Ms. Sanders with a knife. Ms. Sanders suffered cuts to her head, neck, and hand. Appellant then fled from the residence, and was later arrested and charged with burglary of habitation.

■ In his first point of error, appellant avers the trial court erred in failing to charge the jury on the lesser included offense of aggravated assault.

■ It is error for a trial judge to refuse to submit a charge on a lesser included offense when (1) the lesser included offense is included within the proof necessary to establish the offense charged, and (2) there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense. *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex.Crim.App.1993). The standard of review set out in *Rousseau* requires only "some evidence" establishing the lesser included offense. *Rousseau*, 855 S.W.2d at 673. When the issue to be decided is whether a court failed to instruct a jury on a lesser included offense, the weight and credibility of the accused's version of events is not to be addressed. *Mendivil v. State*, 812 S.W.2d 629, 631 (Tex.App.—El Paso 1991, no pet.). Because the "jury may accept or reject all or a part of any witness's testimony, including that of the defendant," a reviewing court looks at all the evidence to determine whether any scenario presented will support the requested charge. *Merchant v. State*, 810 S.W.2d 305, 309 (Tex.App.—Dallas 1991, pet. ref'd).

A person commits the offense of burglary of habitation if "without the effective consent of the owner, he enters a habitation ... with

the intent to commit a felony" therein. TEX. PENAL CODE ANN. § 30.02 (Vernon 1994). Appellant notes the indictment included the offense of aggravated assault as the felony basis for the charge of burglary of habitation. Additionally, he claims the State established proof of the existence of the aggravated assault. However, he contends there was "some evidence" that he had "consent" to enter the residence. Appellant asserts this evidence, if believed by the trier of fact, would show that appellant, if guilty, would only be guilty of the lesser included offense of aggravated assault. We disagree.

Appellant offered evidence he had previously been seen at or around 903 Second Street on several occasions, including early morning hours. His father testified appellant and Ms. Sanders would, on occasion, stay together in a room at his house or at 903 Second Street. He further testified that, on occasion, he would call the residence to speak with appellant and had previously picked appellant up at that location. Appellant's previous employer testified appellant had given 903 Second Street as his home address. Ms. Sanders testified appellant had visited her at the residence on prior occasions. Finally, a state's witness testified that on the day of the offense, appellant stated that "he was going back home" and was going to "f— around and kill one of these hos." While this may be evidence appellant had prior consent to enter the residence, we find it is no evidence of owner consent to enter the residence on the day of the offense. Therefore, it was not error for the court to exclude the lesser included offense of aggravated assault from the charge.

Appellant's first point of error is overruled.

■ In point of error four, appellant claims the trial court erred in finding he had used or exhibited a deadly weapon because the State failed to give written notice of its intent to seek an affirmative deadly weapon finding.

■ A defendant is entitled to notice the State intends to seek an affirmative finding

---

2. The residence at 903 Second Street was inherited by Ms. Gardner and Ms. Sanders, and was each person's separate property. Therefore,

with regard to the issue of consent to enter the residence, appellant had no ownership interest.

that he used a deadly weapon during the commission of the charged offense. *Ex parte Patterson*, 740 S.W.2d 766, 775 (Tex.Crim. App.1987), *overruled on other grounds by Ex parte Beck*, 769 S.W.2d 525, 528 (Tex.Crim. App.1989). While it is not necessary such notice be contained in the indictment, it must be in writing and reasonably calculated to inform the defendant the use of a "deadly weapon will be a fact issue at the time of prosecution." *Ex parte Beck*, 769 S.W.2d 525, 526 (Tex.Crim.App.1989); *see Luken v. State*, 780 S.W.2d 264, 266 (Tex.Crim.App. 1989).

It is undisputed the indictment contained no express allegation of the use of a deadly weapon. Additionally, the State does not dispute there is no other pleading sufficient to put the defendant on notice it would be seeking a deadly weapon finding. However, the State avers that the indictment, while not expressly asserting the use of a deadly weapon, was sufficient to put the defendant on notice. The indictment in this case stated in relevant part that:

> Aubrey Sanders, Jr., on or about the 21st day of February, A.D., 1993, and before the presentment of this indictment, in said County and State, did then and there intentionally and knowingly enter a habitation without the effective consent of Betty Ann Gardner, the owner, and therein attempted to commit and committed the felony of Aggravated Assault.

The State notes the penal code defines aggravated assault as an assault whereby the assailant "cause[d] serious bodily injury" or "use[d] or exhibit[ed] a deadly weapon during the commission of the [offense]." Tex. Penal Code Ann. § 22.02(a)(1), (2) (Vernon 1994). The State further suggests it necessarily follows from the statutory definition that if appellant is charged with committing aggravated assault, he is implicitly charged with either using or exhibiting a deadly weapon or causing serious bodily injury. The court of criminal appeals and intermediate appellate courts have routinely held an allegation of serious bodily injury or death caused by some act or instrument is sufficient notice for a deadly weapon finding. *See, e.g., Ex parte McKithan*, 838 S.W.2d

560, 561 (Tex.Crim.App.1992) (recognizing that motor vehicle can be a deadly weapon in involuntary manslaughter case for purposes of providing notice in indictment); *Gilbert v. State*, 769 S.W.2d 535, 536–37 (Tex.Crim.App. 1989) (stating an allegation that defendant caused serious bodily injury to a child by placing him in hot liquid provided sufficient notice that State would seek affirmative finding of use of deadly weapon); *Ex parte Beck*, 769 S.W.2d at 526 (holding that death caused by some instrument is notice State seeks affirmative finding); *Pena v. State*, 864 S.W.2d 147, 150–51 (Tex.App.—Waco 1993, no pet.) (holding an allegation that defendant caused death by cutting victim's throat with "sharp object" was sufficient to give notice of state's intent to seek deadly weapon finding); *Mixon v. State*, 781 S.W.2d 345, 346 (Tex. App.—Houston [14th Dist.] 1989), *aff'd*, 804 S.W.2d 107 (Tex.Crim.App.1991) (indicating that indictment alleging unknown object used to strangle victim provided sufficient notice to defendant the State would seek deadly weapon finding). Therefore, the State argues that by alleging appellant committed aggravated assault, the indictment also alleges appellant committed serious bodily injury, which, according to the above line of cases, would satisfy the notice requirement.

While the state's argument is persuasive, we cannot agree that merely alleging appellant committed "aggravated assault" is equivalent to alleging he caused serious bodily injury or death by some act or with some instrument or weapon such that it would suffice to give him notice the State is seeking a deadly weapon finding. In *Ex parte Beck*, the court of criminal appeals held that "any allegation which avers a death *was caused* by a named weapon or instrument *necessarily includes* an allegation that the named weapon or instrument was, 'in the manner of its use ... capable of causing' (since it *did* cause) death." *Ex parte Beck*, 769 S.W.2d at 526–27 (footnote omitted) (emphasis in original); *see also Johnson v. State*, 815 S.W.2d 707, 709 (Tex.Crim.App.1991) (noting that indictment alleging death caused by "striking with hands and feet" was sufficient notice of state's intent to seek affirmative deadly weapon finding); *Mixon*, 804 S.W.2d at 108 (holding death caused by "unknown object"

provides sufficient notice); *Speering v. State*, 797 S.W.2d 36, 37 (Tex.Crim.App.1990) (indicating that death caused by "stabbing with a knife" provides notice). Cases following *Beck* have held that an indictment alleging "serious bodily injury" is sufficient notice of the state's intent to seek a deadly weapon finding, if the indictment also alleged the serious bodily injury was caused by some *act or instrument. See Ex parte Brown*, 773 S.W.2d 332, 333 (Tex.Crim.App.1989) (holding that indictment alleging defendant committed attempted murder by "stabbing with a knife" was proper notice of intent to seek deadly weapon finding); *Gilbert v. State*, 769 S.W.2d at 536–37 (holding serious bodily injury caused by "placing victim in hot liquid" was proper notice); *Mitchell v. State*, 821 S.W.2d 420, 424 (Tex.App.—Austin 1991, pet. ref'd) (holding that indictment alleging serious bodily injury caused by motor vehicle "colliding with a fixed object" provides sufficient notice of state's intent to seek deadly weapon finding).

Here, the indictment alleged appellant committed aggravated assault, which we find would implicitly include an allegation appellant committed an assault whereby he either used or exhibited a deadly weapon or caused serious bodily injury. However, we find the notice requirement of *Ex parte Patterson* mandates some form of *express* written notice such that appellant would know that a "deadly weapon would be a fact issue at the time of prosecution." *Ex parte Beck*, 769 S.W.2d at 526; *see also Grettenberg v. State*, 790 S.W.2d 613, 614–15 (Tex.Crim.App.1990); *Luken*, 780 S.W.2d at 266. Therefore, because the indictment in this case did not allege the use of a deadly weapon nor specify that the aggravated assault was committed by some act or instrument, we find the court erred in submitting the deadly weapon issue to the jury.

■■■ Having found the trial court erred in submitting the deadly weapon special issue and entering an affirmative finding of such against Sanders, we must determine whether the error affected the judgment and sentencing. "Even where a deadly weapon special issue has been improperly submitted to the jury, a defendant's conviction and punish-

ment will not be vitiated where the submission did not have an adverse effect on the determination of guilt or the length of sentencing." *Mata v. State*, 939 S.W.2d 719, 727 (Tex.App.—Waco 1997, no pet.) (citing *Ex parte Patterson*, 740 S.W.2d at 778); *see Hocutt v. State*, 927 S.W.2d 201, 204 (Tex. App.—Fort Worth 1996, pet. ref'd).

The record reflects, *inter alia*, several witnesses testified appellant entered the residence at 903 Second Street without the consent of the owner and cut Ms. Sanders several times with a knife. Additionally, there was testimony appellant told an acquaintance on the day of the offense that he was going to "f—— around and kill one of these hos." Furthermore, during the punishment phase, the State presented evidence appellant had been convicted of sixteen prior offenses, including two felony convictions alleged and found true by the jury as enhancement paragraphs in the indictment. Finally, there was evidence, at punishment, that appellant's reputation for being a peaceful and law-abiding citizen was bad. Having reviewed the entire record, we do not find the improperly submitted special issue adversely affected either appellant's conviction or sentence. Consequently, the trial court's judgment will be reformed to delete the recitation of the jury's answer to the improper deadly weapon special issue and the trial court's affirmative finding made therefrom.

Appellant's fourth point of error is sustained.

■■■ In his fifth, sixth, seventh, eighth, and ninth points of error, appellant asserts he received ineffective assistance of counsel.

To establish ineffective assistance of counsel, appellant must show (1) his attorney's representation was below an objective standard of reasonableness, and (2) but for his attorney's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex.Crim. App.1986); *Brown v. State*, 871 S.W.2d 852, 856 (Tex.App.—Corpus Christi 1994, pet. ref'd). There is a strong presumption that

counsel is competent and actions taken during trial are part of the attorney's trial strategy. *Miniel v. State*, 831 S.W.2d 310, 323 (Tex.Crim.App.1992). Whether appellant received effective assistance of counsel is judged by the totality of the representation, not by isolated acts or omissions. *Ex Parte Welborn*, 785 S.W.2d 391, 393 (Tex.Crim.App. 1990); *Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex.Crim.App.1986).

Appellant maintains his attorney's representation fell below an objective standard of reasonableness because: (1) he failed to ask pertinent questions of the venire panel, (2) he failed to request a pretrial motion on the admissibility of prior convictions, (3) he failed to voir dire the state's reputation witnesses, (4) he failed to object to statements made by state's counsel during voir dire, and (5) the cumulative effect of counsel's trial errors rendered counsel's representation ineffective.

While appellant challenges the effectiveness of his trial counsel, he has failed to allege how the result of the proceeding would have been different if counsel had not made the alleged errors. Because appellant has failed to show any evidence that "trial counsel's deficient performance prejudiced the defense to such a degree that appellant was deprived of a fair trial," we overrule appellant's fifth through ninth points of error. *Castoreno v. State*, 932 S.W.2d 597, 600 (Tex. App.—San Antonio 1996, pet. ref'd) (citing *Strickland*, 466 U.S. at 690–94, 104 S.Ct. at 2066–68).

■ In point of error ten, appellant claims the State violated his Fifth Amendment constitutional right not to testify against himself by commenting on that right during voir dire. Specifically, appellant complains of the following statements presented to the venire panel by the State as hypothetical reasons why a defendant might not want to testify:

I want to take the stand ... but I can't ... because my brother did it and my brother cannot go to prison, it will kill him. I'll just have to do the time. [Or] I'm running these drugs for these guys ... I ain't going to testify, they will shoot me and kill me. [Or] I'm guilty as sin, I can't get on the stand and say that.

Additionally, appellant argues the prosecution's statement that "you will not hold the Defendant's silence against her, or in this case, Aubrey Sanders, against him," is an impermissible comment on the defendant's right not to testify.

■ The state's comment on a defendant's invocation of his right not to testify offends both our State and Federal Constitutions. *Nickens v. State*, 604 S.W.2d 101, 104 (Tex.Crim.App.1980); *Pollard v. State*, 552 S.W.2d 475, 477 (Tex.Crim.App.1977). The language of such a comment must be either manifestly intended, or of such a character that the jury would naturally and necessarily take it to be a comment on the defendant's failure to testify. *Nickens*, 604 S.W.2d at 102. If the challenged comment called the jury's attention to the lack of evidence that only appellant could supply, the conviction must be reversed. *Nowlin v. State*, 507 S.W.2d 534, 536 (Tex.Crim.App.1974).

■ Here, appellant failed to object to the alleged improper statements and, thus, has not preserved his complaint for our review. *Marin v. State*, 851 S.W.2d 275, 279 (Tex.Crim.App.1993), *overruled on other grounds by Matchett v. State*, 941 S.W.2d 922, 928 (Tex.Crim.App.1996); *see Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Crim.App. 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1442, 137 L.Ed.2d 548 (1997). Even if appellant had properly preserved his complaint, the court of criminal appeals has held that statements made during voir dire as to a defendant's right to testify are not error because the defendant has not yet invoked his right. *See Campos v. State*, 589 S.W.2d 424, 426 (Tex.Crim.App.1979) (stating that because state's counsel had no way of knowing whether defendant would testify, it was not error to comment on defendant's failure to testify during voir dire).

Appellant's tenth point of error is overruled.

■ In point of error eleven, appellant avers the trial court erred by permitting the State to refer to its client as the "law-abiding citizens of this county." Appellant asserts that because the State only represents "law-

abiding citizens" and is prosecuting him in this case, the comment suggests appellant's guilt, and is therefore improper.

Because appellant failed to preserve his complaint for our review, he has waived this point of error. Tex.R.App. P. 33.1(a);[3] *Penry v. State*, 903 S.W.2d 715, 741 (Tex.Crim. App.1995) (holding, under former rule 52(a), appellant must object to alleged error in the trial court or such error is waived).

Appellant's eleventh point of error is overruled.

 In his twelfth point of error, appellant claims his constitutional right to a fair and impartial trial was violated by the state's comments regarding his prior convictions. Specifically, the prosecutor remarked that "the State could take the position that they're going to see Aubrey Sanders, with probably 14 to 15 convictions, and then think Marcia Gardner is a lightweight."

No error is presented in this point because the record reflects the above statement was made at the bench and outside the hearing of the venire panel.

In his final point of error, appellant claims the trial court erred in permitting the State to voir dire the venire panel twice. Appellant asserts that because the prosecutor voir dired the same venire for two separate cases, he was effectively given the opportunity to voir dire the panel twice, where appellant was only given one opportunity.

Appellant has cited no authority in support of his position, therefore, we find the point has been inadequately briefed and refuse to address it. Tex.R.App. P. 38.1(h);[4] *see Smith v. State*, 907 S.W.2d 522, 532 (Tex. Crim.App.1995) (holding under former Texas Rule of Appellate Procedure 74(f), predecessor to 38.1(h), appellant must present authority for its argument if such argument is to be considered on appeal).

Appellant's thirteenth point of error is overruled.

The judgment of the trial court is RE-FORMED to delete the deadly weapon finding and is AFFIRMED as MODIFIED.

---

3. Formerly rule 52(a). Tex.R.App. P. 52(a), 707–708 S.W.2d (Tex.Cases) LXIV (1986, superseded 1997). Rule 33.1(a) is substantially identical to former rule 52(a).

4. Formerly rule 74(f). Tex.R.App. P. 74(f), 707–708 S.W.2d (Tex.Cases) LXXV (1986, superseded 1997). Rule 38.1(h) is substantially identical to former rule 74(f).