Charlie FLENTEROY, Appellant,

v.

The STATE of Texas, Appellee.

No. 03–02–00624–CR.

Court of Appeals of Texas, Austin.

April 17, 2003.

---

* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1. Section 29.03 provides:

Nick Duncan, Austin, for Appellant.

Holly E. Taylor, Asst. Dist. Atty., for appellee.

Before Justices KIDD, PATTERSON and ONION.*

## OPINION

JOHN F. ONION, JR., Justice (Retired).

This appeal presents an unusual procedural question. After a jury has rejected an affirmative finding of the use of a specific deadly weapon during the commission of the offense as only alleged in the indictment, may a deadly weapon issue be resubmitted at the penalty stage of the trial for the jury to name and specify the instrument used and determine if it was a deadly weapon? The answer, under the circumstances of the instant case, is "no." We will delete the affirmative finding of a deadly weapon from the judgment and affirm the judgment of conviction as modified.

Appellant Charlie Flenteroy was indicted for aggravated robbery by the use or exhibition of a deadly weapon, "to wit: a screwdriver," in the first count of the indictment. *See* Tex. Pen.Code Ann. § 29.03(a)(2) (West 2003).[1] The second

(a) A person commits an offense if he commits robbery as defined in Section 29.02, and he:
(1) causes serious bodily injury to another;
(2) uses or exhibits a deadly weapon; or

count of the indictment simply charged appellant with the offense of unauthorized use of a motor vehicle. *See* Tex. Pen.Code Ann. § 31.07 (West 2003). There was no special pleading in the indictment regarding the use or exhibition of a deadly weapon. There was no written notice outside and independent of the indictment alerting appellant of the State's intention to seek an affirmative finding of the use of any deadly weapon other than the screwdriver.

The jury found appellant guilty of the lesser-included offense of robbery and of unauthorized use of a motor vehicle. At the penalty stage of the trial, the jury assessed punishment for the robbery offense at twenty years' imprisonment, and found that a deadly weapon, "a hard metal-like object," was used during the commission of the robbery offense. In addition, the jury also assessed punishment for the offense of unauthorized use of a motor vehicle at two years' confinement in a state jail. *See* Tex. Pen.Code Ann. § 12.35 (West 2003).

## Points of Error

Appellant advances four points of error all relating to the penalty stage of the trial. First, appellant contends that the trial court erred by allowing the jury to make an affirmative finding of a deadly weapon after the jury failed to find appellant guilty of aggravated robbery as alleged. In the second and third points of error, appellant urges that there was a lack of notice or insufficient notice to him when the trial court allowed the jury to make an affirmative deadly weapon finding of "a hard metal-like object" at the penalty stage of the trial when the only notice given him that the State would seek an affirmative finding was the allegation in the indictment of the use of a "screwdriver" as an element of the aggravated robbery offense, an element rejected by the jury at the guilt/innocence stage of the trial. Lastly, appellant contends that the constitutional doctrine of collateral estoppel prohibited the prosecution from relitigating "via the submitted special issue at punishment phase, whether appellant used or exhibited a deadly weapon."

## Facts

On November 29, 2001, about 6:00 p.m., appellant escaped from the Austin State Hospital. About the same time, Mona Mahdy retrieved her 1991 Honda Prelude, from a body shop where it had been taken for repairs. Mahdy was driving home when she stopped for gasoline at a Texaco station and convenience store about 6:30 p.m. Mahdy used her credit card at the pump and was putting gas in her car when appellant approached and said, "Give me the keys to your car." Mahdy's right hand was on the gas nozzle and she was holding her coat closed with her left hand. When she dropped her left hand, she felt a knife,

(3) causes bodily injury to another person or threatens or places another person in fear of imminent bodily injury or death, if the other person is:
  (A) 65 years of age or older; or
  (B) a disabled person.
(b) An offense under this section is a felony of the first degree.
(c) In this section, "disabled person" means an individual with a mental, physical, or developmental disability who is substantially unable to protect himself from harm.

Tex. Pen.Code Ann. § 29.03 (West 2003).

Trial courts are not authorized to grant probation (community supervision) to a defendant convicted of aggravated robbery. Tex.Code Crim. Proc. Ann. art. 42.12, § 3g(a)(1)(7) (West Supp.2003). The parole eligibility for an inmate convicted of aggravated robbery is the same as an inmate whose judgment of conviction contains an affirmative finding of a deadly weapon. Tex. Gov't Code Ann. § 508.145(d) (West Supp.2003).

an instrument, or a weapon, and immediately raised her left hand. She did not look down. She had not seen anything in appellant's hands when he approached. Mahdy next felt a hard object pressed against her ribs, something she described as dull, not sharp. Mahdy stated that she felt threatened and was placed in fear of imminent bodily injury and death. As a registered nurse, Mahdy expressed the opinion that the instrument was capable of causing death or serious bodily injury by "stabbing" her. She told appellant that the keys were in the car. Appellant got in and told Mahdy to take the gas nozzle out of the car. She did and appellant drove off in her car. Mahdy testified that her purse was in the car along with thirty dollars, her checkbook, her house keys, and her cellular phone. She immediately reported the incident to the convenience store clerk who called the Austin police. Officer Charles Rohre responded. Subhush Patel, the store clerk, testified that Mahdy told him that someone had taken her car "and put a knife to my neck." Officer Rohre stated that Mahdy told him that the man displayed a "four-inch blade knife" and she could see it clearly.

At approximately 9:00 p.m. the same evening, Rockdale Police Officer Frank Thrower stopped appellant because of defective taillights on the Mahdy vehicle. Appellant gave a false name and had no driver's license. Appellant was taken into custody. The car was towed by a local towing company.

When Mahdy recovered her car from the towing company, she found her thirty dollars missing but most of her other possessions were in the car. On the floor board in front of the passenger seat, Mahdy found a screwdriver. She took the screwdriver to the Austin Police Department and testified that the screwdriver was consistent with what she felt when she dropped her left hand during the robbery. Mahdy admitted that the screwdriver could have been left in her car at the body shop where the car had been repaired.[2]

Appellant admitted that he had taken Mahdy's car, but claimed that he waited until Mahdy walked to the convenience store, then he got in the car, with its motor already running, and drove off. He denied that he accosted Mahdy. On his way to Rockdale, appellant stopped the car to determine if it contained anything valuable. In his search, appellant observed a screwdriver in the vehicle.[3]

## Background

At the conclusion of the guilt/innocence stage of the trial, apparently because of the evidence, the State asked the trial court to strike from the first count of indictment the phrase "to wit: a screwdriver" as being mere surplusage. The trial court refused the request.

The trial court submitted the aggravated robbery count as alleged, as well as the lesser-included offense of robbery [4] and the second count of unauthorized use of a motor vehicle as alleged. During the

---

2. We do not find that the screwdriver was introduced into evidence. It is not State's exhibit number two as suggested by the State.

3. Whether the screwdriver that appellant observed in the car was the same as the one later found by Mahdy in her car was never established.

4. In submitting the lesser-included offense of robbery, the trial court instructed the jury:
   If you have a reasonable doubt as to whether the defendant, Charlie Lee Flenteroy, used or exhibited a deadly weapon, you cannot convict the defendant of aggravated robbery, but you will consider whether the defendant is guilty of the lesser-included offense of robbery.

jury's deliberations at the guilt/innocence stage of the trial, the trial court gave the following response to the jury's question:

I have received your written question that reads as follows:

*In the charge of Aggravated Robbery do we have to find that the deadly weapon used was the screwdriver entered in evidence in order to find that a deadly weapon was used?*

The Court under law is not permitted to answer the question you submitted. You are instructed that you have received all the law and evidence you shall receive in order to reach a verdict in this case.

Please consider this instruction along with those already given you and continue your deliberations.

Rejecting the aggravating element of the aggravated robbery count, the jury found appellant guilty of the lesser-included offense of robbery and of unauthorized use of a motor vehicle. There was no finding of the use or exhibition of a deadly weapon.

At the penalty stage of the trial, without further evidence regarding the use of any instrument,[5] the trial court instructed the jury again, over objection, that a "deadly weapon means anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *See* Tex. Pen.Code Ann. § 1.07(a)(17)(B) (West 2003). The trial court additionally submitted the following charge:

Notwithstanding the previous instructions given above in Paragraphs 6, if you find beyond a reasonable doubt that the defendant, CHARLIE LEE FLENTEROY, used or exhibited a deadly weapon during the commission of the Robbery for which you have found him guilty and you make such finding on one of the attached verdict forms, and the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than 4 years, he must serve at least two years before he is eligible for parole.

Eligibility for parole does not guarantee that parole will be granted.

In the verdict forms for Count I, the trial court submitted:

We further find that the defendant _____ (did or did not) use or exhibit a deadly weapon, namely _____ (specify) during the commission of the offense.

The trial court refused the State's request to submit a special issue regarding a deadly weapon finding regarding Count II—the unauthorized use of a motor vehicle. The court did submit appellant's application for probation to the jury.

During jury argument, the prosecutor urged the jury to find that a deadly weapon was used or exhibited during the commission of the lesser-included offense of robbery and suggested that it could be "a heavy metal-like object." The jury assessed appellant's punishment at twenty years' imprisonment for robbery, found that appellant had used or exhibited a deadly weapon, and filled in the blank with "a heavy metal-like object." The jury assessed two years' imprisonment for the unauthorized use of a motor vehicle, and rejected appellant's request for probation.

---

**5.** At the penalty stage of the trial, the State did offer evidence that appellant had a prior juvenile record, was on felony probation for burglary of a habitation, and had been involved in disciplinary problems while in confinement on the instant charges.

## The Applicable Law

Section 1.07(a)(17)(A), (B) defines "deadly weapon" as meaning "(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Pen.Code Ann. § 1.07(a)(17)(A), (B) (West 2003).[6]

Article 42.12, section 3g(a)(1) of the Code of Criminal Procedure limits the trial court's authority to grant probation where a defendant has been adjudged guilty of certain named offenses. Tex.Code Crim. Proc. Ann. art. 42.12, § 3g(a)(1) (West Supp.2003). Section 3g(a)(2) of the same statute further provides that a trial court's authority to grant probation is inapplicable

to a defendant when it is shown that a deadly weapon as defined in Section 1.07, Penal Code, was used or exhibited during the commission of a felony offense or during immediate flight therefrom, and that the defendant used or exhibited the deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited. On an affirmative finding under this subdivision, the trial court shall enter the finding in the judgment of the court. On an affirmative finding that the dead-

ly weapon was a firearm, the court shall enter that finding in its judgment. *Id.*[7]

Section 508.145(d) of the Government Code provides:

An inmate serving a sentence for an offense described by Section 3g(a)(1)(A), (C), (D), (E), (F), (G), or (H), Article 42.12, Code of Criminal Procedure, or for an offense for which the judgment contains an affirmative finding under Section 3g(a)(2) of that article, is not eligible for release on parole until the inmate's actual calendar time served, without consideration of good conduct time, equals one-half of the sentence or 30 calendar years, whichever is less, but in no event is the inmate eligible for release on parole in less than two calendar years.

Tex. Gov't Code Ann. § 508.145(d) (West Supp.2003).

▮▮▮ It is clear that the affirmative finding of the use or exhibition of a deadly weapon during the commission of an offense and the entry of that affirmative finding in the judgment affects a defendant's parole eligibility. *See Papke v. State,* 982 S.W.2d 464, 467 (Tex.App.-Austin 1998, pet. ref'd, untimely filed). Such finding delays a defendant's eligibility for parole. *Ex parte Patterson,* 740 S.W.2d

---

**6.** Weapons included in section 1.07(a)(17)(A) are sometimes referred to as deadly weapons by "design" and those included in section 1.07(a)(17)(B) are referred to as deadly weapons by "use." Tex. Pen.Code Ann. § 1.07(a)(17)(A), (B) (West 2003); *Adame v. State,* 37 S.W.3d 141, 143 (Tex.App.-Waco 2001, no pet.); *Holder v. State,* 837 S.W.2d 802, 807 (Tex.App.-Austin 1992, pet. ref'd).

**7.** An "affirmative finding" requires an express determination by the trier of fact that a deadly weapon was used or exhibited during the commission of the offense. *Polk v. State,* 693 S.W.2d 391, 396 (Tex.Crim.App.1985); *Ed-*

*wards v. State,* 21 S.W.3d 625, 627 (Tex.App.-Waco 2000, no pet.).

A jury, as the trier of fact, makes an "express determination" that a deadly weapon was used when it (1) finds the defendant "guilty as charged in the indictment" and the indictment alleged the use of a "deadly weapon"; (2) finds the defendant "guilty as charged in the indictment" and the indictment alleged the use of a per se deadly weapon; or (3) affirmatively answers a special issue on deadly weapon use. *Davis v. State,* 897 S.W.2d 791, 793 (Tex.Crim.App. 1995); *Polk,* 693 S.W.2d at 396.

*Edwards,* 21 S.W.3d at 627.

766, 773–74 (Tex.Crim.App.1987), *overruled on other grounds, Ex parte Beck,* 769 S.W.2d 525 (Tex.Crim.App.1989). Thus, a defendant has a fundamental, constitutional liberty interest in his parole eligibility in connection with an affirmative finding of the use of a deadly weapon. *See Mixon v. State,* 781 S.W.2d 345, 346 (Tex. App.-Houston [14th Dist.] 1989), *aff'd,* 804 S.W.2d 107 (Tex.Crim.App.1991).

Under article I, section 19 of the Texas Constitution, an accused is entitled to notice from the State in some form that the use and exhibition of a deadly weapon will be a fact issue at the time of the prosecution. *Ex parte Brooks,* 847 S.W.2d 247, 248 (Tex.Crim.App.1993); *Luken v. State,* 780 S.W.2d 264, 267–68 (Tex.Crim. App.1989); *Jones v. State,* 936 S.W.2d 32, 34 (Tex.App.-San Antonio 1996, pet. ref'd). The notice or State's pleadings must be in writing. *Brooks,* 847 S.W.2d at 248; *Luken,* 780 S.W.2d at 267. The written notice given may be independent of the indictment. *Patterson,* 740 S.W.2d at 776; *Jones,* 936 S.W.2d at 34. Notice is usually given in the indictment by allegation that the offense was committed by use or exhibition of a deadly weapon giving the name or nature of the instrument or object used or exhibited where that is an element of the offense charged (as in the instant case), or by a special pleading on the face of the indictment, or "by the language in an indictment that specifically mentions a particular object or substance and its use with respect to death or serious bodily injury." *Narron v. State,* 835 S.W.2d 642, 643 (Tex.Crim.App.1992); *Papke,* 982 S.W.2d at 467.

In *Hocutt v. State,* 927 S.W.2d 201, 204 (Tex.App.-Fort Worth 1996, pet. ref'd), the court found defective the notice faxed to the defendant's counsel Friday before the Monday trial because it "neglected to even mention the nature of the weapon sought to be proved." In *Luken,* 780 S.W.2d at 266–67, the jury's affirmative finding of a deadly weapon was held invalid because it was not supported by a written pleading, in the indictment or elsewhere.

No mention of an implement appears at all, much less of one that is a deadly weapon *per se,* or is expressly alleged to be a deadly weapon.... Proof alone will not support such a finding, for evidence alone gives the accused no prior indication that the nature of the weapon used was to be a particular issue in the case, with additional consequences vis-a-vis his liberty.

*Id.*

In *Sanders v. State,* 963 S.W.2d 184 (Tex.App.-Corpus Christi 1998, pet. ref'd), the court held that there was no other written pleading, and since "the indictment in this case did not allege the use of a deadly weapon nor specify that the aggravated assault was committed by some act or instrument, we find that the court erred in submitting the deadly weapon issue to the jury." *Id.* at 189. *See also Mata v. State,* 939 S.W.2d 719, 727 (Tex.App.-Waco 1997, no pet.) (where State failed to specify particular weapon used to stab victim, defendant did not receive sufficient notice).

Therefore, the written notice must state the name or nature of the instrument or instruments or objects which are alleged as deadly weapons.

### Discussion

In the instant case, appellant acknowledges that he received proper notice from the indictment in Count I that the State would seek an affirmative finding of the use or exhibition of a deadly weapon, "to wit: a screwdriver." That element of the offense of aggravated robbery as charged was submitted to the jury and rejected when the jury found appel-

lant guilty of the lesser-included offense. Appellant in effect contends that this concluded the State's intention to seek an affirmative finding of a deadly weapon of which he had been given notice. Without further notice, written or otherwise, and without further evidence on the issue, the penalty stage of the trial was conducted. At this point, appellant learned for the first time that the State was asking for a special issue type submission of a different deadly weapon charge, this time allowing the jury to first determine the nature of instrument or weapon used and then to decide if the chosen instrument or weapon was used as a deadly weapon. This requested procedure was without further notice or supporting allegation. The trial court reasoned that the allegation of a deadly weapon, "to wit: a screwdriver" in the first count of the indictment was sufficient to notify appellant that a deadly weapon issue remained in the case despite the jury's earlier verdict. The trial court found persuasive *Grettenberg v. State*, 790 S.W.2d 613 (Tex.Crim.App.1990), and *Ex parte Beck*, 769 S.W.2d 525 (Tex.Crim. App.1989), and "followed Blackwell's charge . . . which has a space for the jury to fill in the blank as to what that weapon was." *Grettenberg*, citing *Beck*, held that accused persons are entitled to *notice in some form* that the use of a deadly weapon will be "a fact issue at the time of the prosecution, if the State intends to pursue the entry of a deadly weapon finding." 790 S.W.2d at 614. *Grettenberg* then added "[a]ny allegation which avers an attempt to cause death of a person by the use of a named weapon necessarily includes an allegation that the named weapon or instrument was, in the manner of its

use or intended use, capable of causing death." *Id.*

In *Grettenberg*, the defendant was convicted of burglary of a habitation with intent to commit aggravated assault as charged in the first count of the indictment. The second count alleged attempted capital murder by use of a deadly weapon.[8] This second count was abandoned by the State, but the allegation of a deadly weapon therein was held sufficient to put the defendant on notice that a deadly weapon finding would be sought in connection with the first count because the counts were so interrelated under the facts. *Id.* at 614–15. In *Beck*, a habeas corpus proceeding, the defendant had been indicted for murder for causing the death of the victim by shooting him with "a gun." Upon the submission of a special issue, the jury found the defendant had used a deadly weapon. The defendant was, however, convicted of voluntary manslaughter and the deadly weapon finding was entered and affected the defendant's eligibility for parole. *Beck*, 769 S.W.2d at 526–27. The notice given in the murder indictment was held sufficient.

Despite the continued viability of *Grettenberg* and *Beck*, those cases did not involve a variance between the instrument named instrument in the notice, or the proof, or a second litigation of the deadly weapon issue during the same trial, or the use of a fill-in the blank verdict form permitting the jury to decide if the instrument it named or designated was a deadly weapon within the meaning of the law. The trial court also mentioned "Blackwell's charge," without giving any further reference or identification. We have found a suggested verdict form set out in 8 Mi-

---

**8.** The said second count alleged *inter alia* that the defendant "intentionally strangl[ed] the Complainant around the neck with an object unknown to the Grand Jury and having intent to commit capital murder of the Complainant." *Grettenberg v. State*, 790 S.W.2d 613, 614 (Tex.Crim.App.1990).

chael J. McCormick, et al., *Texas Practice: Criminal Forms and Trial Manual* § 97.07 (10th ed.1995).[9] If this be the form to which the trial court had reference, it is not authority for the action taken here. If it can be interpreted otherwise, the verdict form is wrong or certainly misleading. Likewise, the trial court's reliance upon *Grettenberg* and *Beck* was misplaced. Those cases make clear that the written notice requirement may take different forms. They do not support, however, a second submission of a deadly weapon issue to the trier of fact where the first submission has been resolved unfavorable to the State, where no further notice is given, and where it is left to the jury to determine both the nature of the instrument or weapon alleged in the original notice and whether it was a deadly weapon as used or exhibited. The *Grettenberg* and *Beck* cases are distinguishable from the instant case.[10]

Appellant vigorously objected to the trial court's proposed charge in the instant case, pointing out that no case law supported the trial court's instructions and that the error would fundamentally violate his federal and state constitutional rights. The objections were overruled.

▬▬▬▬ All the points of error relate to the jury charge at the penalty stage of the

trial. While the parties recognize the claimed error, they have not briefed the contentions as jury charge error. If a defendant timely objects to error in the charge, reversal is required if the error is "calculated to injure the rights of the defendant." *See* Tex.Code Crim. Proc. Ann. art. 36.19 (West 1981). This means no more than that there must be some harm to the defendant from the error. *Ovalle v. State*, 13 S.W.3d 774, 786 (Tex.Crim.App. 2000); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (op. on reh'g). Properly preserved error will require reversal so long as the error is not harmless. *Ovalle*, 13 S.W.3d at 786. In reviewing jury charge error, "the actual degree of harm must be assayed in the light of the entire jury charge, the state of the evidence, including contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record as a whole." *Almanza*, 686 S.W.2d at 171.

We conclude that appellant preserved for review the error in the jury charge at the penalty stage of the trial and that he was harmed by having his liberty interest diminished by the erroneous deadly weapon finding. We sustain appellant's first three points of error.

---

9. The suggested form provides:

VERDICT

We, the jury, find the Defendants, A.B., "Guilty" of the offense of _____.

We further find that the defendant did [*or* did not] use or exhibit a deadly weapon, to wit: _____ [*specify*] during the commission of the offense or during immediate flight therefrom.

[*Or* We further find that the defendant was a party to the offense and knew [*or* did not know] that a deadly weapon, to wit: _____

10. Although not cited, we are aware of *Rachuig v. State*, 972 S.W.2d 170 (Tex.App.-Waco 1998, pet. ref'd). In *Rachuig*, the trial court gave the jury a penalty stage deadly

weapon instruction in an intoxicated assault trial but did not specify what instrument the jury should decide was or was not a deadly weapon. The defendant failed to object to the court's charge. The Waco court of appeals, assuming that the failure to specify the possible deadly weapon was error, held that the error was not egregiously harmful because all the trial evidence pointed to the State's theory that it was the defendant's automobile that the State was claiming was the deadly weapon, not the whiskey or beer containers found in the automobile as urged by the defendant. *Rachuig* is distinguished from the instant case on the facts, as well as the lack of an objection in *Rachuig*.

We need not reach his fourth contention that the constitutional doctrine of collateral estoppel was violated. In view of our disposition of the cause, we will not address the sufficiency of the evidence to support any finding of "a heavy metal-like object," or determine if the multiple and overlapping parole instructions constitute error. Appellant asks only that the deadly weapon finding be removed from the judgment of conviction.

The judgment is modified to delete the deadly weapon finding. As modified, the judgment is affirmed.