IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-831-03






CHARLIE FLENTEROY, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE THIRD COURT OF APPEALS


TRAVIS COUNTY





 Hervey, J., delivered the opinion of the Court in which Keller, PJ., Price,
Womack, Keasler, and Cochran, JJ., joined. Meyers, J., not participating. Johnson,
J., filed a dissenting opinion in which Holcomb, J., joined. 


OPINION 



 The controlling issue in this case is whether a variance between a deadly weapon allegation
in the indictment (a "screwdriver") and the proof at trial (a "hard metal-like object") is material. We
decide that this variance is not material. (1)

 One count of a two-count indictment charged that appellant committed the offense of
unauthorized use of the victim's car. (2) The other count of the indictment charged that appellant
committed the offense of aggravated robbery by using or exhibiting a deadly weapon (a
"screwdriver") in the course of committing theft. (3)

 The State, however, presented evidence at trial that appellant used either a knife, or a
screwdriver or a "hard metal-like object." Appellant testified at trial and denied that he used any
weapon at all. He claimed that he got in the victim's car and drove off when she went inside the
convenience store. We set out the evidence from the opinion of the Court of Appeals:

 On November 29, 2001, about 6:00 p.m., appellant escaped from the Austin State
Hospital. About the same time, Mona Mahdy retrieved her 1991 Honda Prelude,
from a body shop where it had been taken for repairs. Mahdy was driving home
when she stopped for gasoline at a Texaco station and convenience store about 6:30
p.m. Mahdy used her credit card at the pump and was putting gas in her car when
appellant approached and said, "Give me the keys to your car." Mahdy's right hand
was on the gas nozzle and she was holding her coat closed with her left hand. When
she dropped her left hand, she felt a knife, an instrument, or a weapon, and
immediately raised her left hand. She did not look down. She had not seen anything
in appellant's hands when he approached. Mahdy next felt a hard object pressed
against her ribs, something she described as dull, not sharp. Mahdy stated that she
felt threatened and was placed in fear of imminent bodily injury and death. As a
registered nurse, Mahdy expressed the opinion that the instrument was capable of
causing death or serious bodily injury by "stabbing" her. She told appellant that the
keys were in the car. Appellant got in and told Mahdy to take the gas nozzle out of
the car. She did and appellant drove off in her car. Mahdy testified that her purse
was in the car along with thirty dollars, her checkbook, her house keys, and her
cellular phone. She immediately reported the incident to the convenience store clerk
who called the Austin police. Officer Charles Rohre responded. Subhush Patel, the
store clerk, testified that Mahdy told him that someone had taken her car "and put a
knife to my neck." Officer Rohre stated that Mahdy told him that the man displayed
a "four-inch blade knife" and she could see it clearly.


 At approximately 9:00 p.m. the same evening, Rockdale Police Officer Frank
Thrower stopped appellant because of defective taillights on the Mahdy vehicle. 
Appellant gave a false name and had no driver's license. Appellant was taken into
custody. The car was towed by a local towing company.


 When Mahdy recovered her car from the towing company, she found her thirty
dollars missing but most of her other possessions were in the car. On the floor board
in front of the passenger seat, Mahdy found a screwdriver. She took the screwdriver
to the Austin Police Department and testified that the screwdriver was consistent
with what she felt when she dropped her left hand during the robbery. Mahdy
admitted that the screwdriver could have been left in her car at the body shop where
the car had been repaired. (Footnote omitted). 


 Appellant admitted that he had taken Mahdy's car, but claimed that he waited until
Mahdy walked to the convenience store, then he got in the car, with its motor already
running, and drove off. He denied that he accosted Mahdy. On his way to Rockdale,
appellant stopped the car to determine if it contained anything valuable. In his
search, appellant observed a screwdriver in the vehicle. (Footnote omitted).


Flenteroy v. State, 105 S.W.3d 702, 705-06 (Tex.App.-Austin 2003).

 There is some question whether the screwdriver that the victim found in her car was admitted
into evidence. See Flenteroy, 105 S.W.3d at 706 n.2 (unable to find "that the screwdriver was
introduced into evidence"). A screwdriver is listed in the index to the Exhibits volume (Volume VI)
of the reporter's record as State's Exhibit 2. This volume, however, contains a picture of what
purports to be State's Exhibit 2 and it is not a screwdriver. Another volume (Volume III) of the
reporter's record reflects that the screwdriver that the victim found in her car was admitted into
evidence as State's Exhibit 2.

 Q. [PROSECUTION]: Ms. Mahdy, when you went to meet with Detective Gay that
day do you recall whether or not you took anything with you, anything in particular?


 A. Yes. I took the screwdriver.


 Q. All right. And what did you do with the screwdriver when you went to meet with
Detective Gay?


 A. When I found it in the car I had wrapped it in paper towels and I put it in a bag. 
And I gave it to him because I thought that he would want to see it.


 [PROSECUTION]: May, I approach the witness again, Your Honor?


 [TRIAL COURT]: You may.


 (State's Exhibit No. 2 was marked.)


 Q. Ms. Mahdy, I'm tendering to you at this time what is marked for identification
purposes as State's Exhibit No. 2. Do you recognize that, ma'am?


 A. Yes, I do.


 Q. And what is State's Exhibit No.2, ma'am?


 A. It's a screwdriver.


 (State's Exhibit No. 2 was identified.)


 Q. Is State's Exhibit No. 2 the same screwdriver that you found inside your car when
you recovered it the Saturday following the robbery?


 A. Yes, it is.


 Q. And this is the same screwdriver that you returned over to Detective Gay?


 A. Yes, it is.


 [PROSECUTION]: Your Honor, at this time State will offer State's Exhibit No. 2
into evidence.


 (State's Exhibit No. 2 was offered.)


 [PROSECUTION]: Let the record reflect, Your Honor, that I'm tendering it to
Mr.-Mr. Short. Let the reflect that I forgot his name.


 [TRIAL COURT]: Record shall so reflect the first part.


 [MR. SHORT]: No objection to State's Exhibit No. 2.


 [TRIAL COURT]: State's 2 is admitted.


 (State's Exhibit No. 2 was admitted into evidence.)


 The trial court submitted jury instructions on the charges of aggravated robbery and 
unauthorized use of a vehicle. The aggravated robbery instruction stated that the jury could convict
appellant of aggravated robbery if, among other things, it found that appellant "used or exhibited a
deadly weapon, to wit: a screwdriver." The aggravated robbery instruction also stated that the jury
could not convict appellant of aggravated robbery if it had a reasonable doubt on whether appellant
"used or exhibited a deadly weapon." This part of the jury instructions did not mention a
"screwdriver." The trial court also submitted a jury instruction on a lesser charge of robbery. See
id. The robbery instruction stated that the jury could convict appellant of robbery if, among other
things, it found that appellant intentionally or knowingly placed the victim in fear of imminent bodily
injury or death. (4) During the jury's deliberations, the trial court gave the following response to the
jury's question:

 I have received your written question that reads as follows:


 In the charge of Aggravated Robbery do we have to find that the deadly weapon used
was the screwdriver entered in evidence in order to find that a deadly weapon was
used?


 The Court under law is not permitted to answer the question you submitted. You are
instructed that you have received all the law and evidence you shall receive in order
to reach a verdict in this case.


 Please consider this instruction along with those already given you and continue your
deliberations.


 The jury convicted appellant of robbery and unauthorized use of a motor vehicle. At the
punishment phase of trial, the trial court submitted another jury instruction on whether appellant used
a deadly weapon during the robbery. See Flenteroy, 105 S.W.3d at 707. This instruction left a blank
for the jury to specify any deadly weapon it may have found appellant to have used during the
robbery. See id. The charge also instructed the jury that a deadly weapon was "anything that in the
manner of its use or intended use is capable of causing death or serious bodily injury." The trial
court overruled appellant's objection that this procedure fundamentally violated his federal and state
constitutional rights.

 [THE DEFENSE]: If on the robbery there's the deadly weapon finding, I have an
argument on that.


 [TRIAL COURT]: Okay.


 [THE DEFENSE]: And in reading over these cases, I don't find any of them where
it says once the jury has considered aggravated robbery with a deadly weapon and did
not charge on that, that it could be brought back in. And I think that-Let's see.


 And I think it was one case that stated that if the weapon was litigated in the trial,
which this was, and it was alleged in the indictment-I think that "Deetzen, (Sic),
Versus, State" in 1989. Then there's another one on Page 8 and 10. "Guadalupe,
(sic), V. State"-that, you know, if it's going to be in there, I want to make an
objection to that charge because fundamentally I think it violates his constitutional
rights, both State and Federal.


 And I don't think an affirmative finding as far as the weapon has been shown in any
of these cases that would deal with the case in point on all fours to this particular trial
that we've gone through.


 [TRIAL COURT]: Okay.


 [THE DEFENSE]: Because in the others it has been-Because in the others it was
implied that it was in the indictment that it was deleted or it was a difference in the
type of weapon from a gun to a shotgun or deadly weapon to a shotgun and nothing
as far as on point to this particular trial that we've had. And I think it would violate
his constitutional rights to put it in there.


 [TRIAL COURT]: Okay. The issue in the case is that the way the State pled Count
One, it gave notice of a deadly weapon-that [appellant] used or exhibited a deadly
weapon; to wit, a screwdriver. The proof at trial as it came out was that it might have
been a screwdriver. It might have been a knife. It might have been another hard,
round object.


 And so the question is, did-And of course the jury found [appellant] guilty of the
lesser included offense of robbery so it-They clearly rejected a finding that the State
had proved beyond a reasonable doubt that the deadly weapon was a screwdriver.


 The question is, does Count One give sufficient notice to the Defense under the
constitution that on the lesser included charge of robbery the State might seek a
finding of a deadly weapon of another type. And the Court is-is persuaded by the
Grettenberg, (sic), case 790 SW2d. 613. And also Ex Parte Beck 769 S.W.2d. 525,
that the State gave sufficient notice-that Count One of the indictment as alleged gave
sufficient notice to the Defense that a deadly weapon would be a fact issue in this
trial.


 I believe the Defense has also stated on the record that they received complete
discovery in the case of the State's file as well as the victim's statement. So I haven't
heard any suggestion of surprise that relates to the-the deadly weapon allegation.


 So based on the evidence, relying on those two cases and the fact that I don't-I
haven't heard of surprise here in this trial, I'm going to allow the jury to make a
finding whether [appellant] did use or did not use a deadly weapon.


 They-I've followed Blackwell's charge on that, which-which has a space for the jury
to fill in the blank as to what that weapon was. So, you know, they must decide what
that weapon was. But they will have that opportunity with regard to the robbery
count.


 The State has also requested for the jury to be given the option to find a deadly
weapon was used or exhibited with regard to Count Two, the unauthorized use of a
vehicle. I'm not going to grant that request. I have more of a question about whether
the notice is sufficient with regard to that count.


 So your objection is noted and overruled. Any other objections to the charge?

 

 The jury found that appellant used a deadly weapon and that it was a "hard metal-like object"
which is what the prosecution suggested during its closing jury arguments. See Flenteroy, 105
S.W.3d at 707. (5) Recognizing the lack of any case law directly addressing the procedure followed
by the trial court in this case, (6) the Court of Appeals decided that it was error to submit the deadly
weapon charge. See Flenteroy, 105 S.W.3d at 710-11 (error to permit a second submission of a
deadly weapon issue to the trier of fact where the first submission has been resolved unfavorably to
the State, where no further notice is given, and where it is left to the jury to determine both the nature
of the instrument or weapon alleged in the original notice and whether it was a deadly weapon as
used or exhibited). We exercised our discretionary authority to review this decision.

 A couple of things in this case are clear. The State proved beyond a reasonable doubt that
appellant used some type of a deadly weapon. (7) And, the State timely informed appellant that it
would seek a deadly weapon finding at trial. (8) The issue, therefore, comes down to whether the
variance between the named instrument in the indictment (a "screwdriver") and the proof at trial (a
"hard metal-like object") was material. See Flenteroy, 105 S.W.3d at 710 (noting variance between
named instrument in indictment and proof at trial). Where, as here, the evidence is sufficient to
support the jury's finding that appellant used a "hard metal-like object" as a deadly weapon but the
State did not prove exactly what it alleged (i.e., a "screwdriver"), the issue is whether the indictment
"informed appellant of the charge against him sufficiently to allow him to prepare an adequate
defense at trial." See Gollihar, 46 S.W.3d at 248.

 On this record (where appellant's claim is that he stole the victim's car without using any
kind of weapon at all), the indictment's deadly weapon allegation sufficiently allowed appellant to
prepare an adequate defense to this allegation. Appellant's defense was not affected by the
"screwdriver" allegation. Appellant's defense did not depend on whether any particular type of
weapon was used. On the contrary, appellant denied that any weapon was used. The variance
between the indictment's allegation of a "screwdriver" and the State's proof at trial of "a hard metal-like object" was, therefore, immaterial. See Gollihar, 46 S.W.3d at 246-50 (immaterial variances
should be disregarded) and at 258 (variance between indictment's allegation of stolen go-cart's
model number and the State's proof at trial of a different model number was immaterial, in part,
because the defendant's "defense did not depend upon the model number alleged").

 While this Court may not necessarily condone the unorthodox procedure followed by the trial
court, we cannot say that in this particular case and on this particular record that this procedure
fundamentally violated appellant's federal and state constitutional rights. The judgment of the Court
of Appeals is reversed, and the case is remanded there for further proceedings consistent with this
opinion.


 Hervey, J.

Delivered: April 6, 2005

Publish
1. The grounds upon which we granted discretionary review in this case state:


 1) To be considered to have provided valid notice [emphasis in original], must the
description of the object used as a deadly weapon in the indictment precisely match
the jury's description of the deadly weapon, or must the indictment merely provide
"notice", in some form, that the use of a deadly weapon will be a fact issue at the
time of trial"?


 2) Where the record shows that the defense was not surprised by the presentation of
a deadly weapon issue at the punishment phase of trial, does the jury's choice of the
lesser-included offense at guilt/innocence vitiate the timely written deadly weapon
notice provided by the State in the indictment?


 3) Does a "fill in the blank" verdict form, which permits the fact finder to name the
deadly weapon used, present a proper affirmative deadly weapon finding?
2. See Section 31.07, Tex. Pen. Code.
3. The State presented evidence at trial that appellant threatened the victim with some type of
weapon while in the course of stealing her car from a convenience store. See Section 29.03(a)(2),
Tex. Pen. Code.
4. See Section 29.02(a)(2), Tex. Pen. Code.
5. The prosecution argued to the jury:


 So what did he have in his hands? I submit to you he had-as she told you, he had a
deadly weapon. He had some sort of a hard object, whether it be a dull knife, a
screwdriver, whatever it might have been. He had it stuck up against her ribs. He's
demanding the keys to her car. And she's a nurse. She feels it. She knows that
whatever it is it's something he can thrust up into her ribs and he can cause serious
bodily injury or death.


 So we're going to ask that when you go back and you deliberate upon the punishment
that you answer the first verdict form with regard to Count One and that you answer
that verdict form in such a manner as to state that [appellant] did use or exhibit a
deadly weapon. And then there's a space for you to describe it. It says, "Namely,"
and then it says, "Specify."


 And you can-You can put a hard metal object or whatever you think fits the evidence
in this case. But she told you based upon the circumstances that whatever it was she
believed at the time that it was something that could cause death or seriously [sic]
bodily injury. And if it had been nothing more than a pencil, you know that by
sticking it in a woman's ribs it could have caused serious bodily injury.
6. See Flenteroy, 105 S.W.3d at 710 (case law "did not involve a variance between the . . .
named [deadly weapon] instrument in the notice, or the proof, or a second litigation of the deadly
weapon issue during the same trial, or the use of a fill-in the blank verdict form permitting the jury
to decide if the instrument it named or designated was a deadly weapon within the meaning of the
law").
7. See generally Fuller v. State, 73 S.W.3d 250 (Tex.Cr.App. 2002) (discussing evidentiary
sufficiency principles); Gollihar v. State, 46 S.W.3d 243 (Tex.Cr.App. 2001) (same); Malik v. State,
953 S.W.2d 234 (Tex.Cr.App. 1997) (same).
8. See generally Ex parte Brooks, 847 S.W.2d 247 (Tex.Cr.App. 1993) (discussing requirement
that State provide a defendant with notice that it will seek a deadly weapon finding).